STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
BENJAMIN FARY, HARRY FARY AND BRUCE VOGEL,
DEFENDANTS-APPELLANTS.

Argued September 20, 1954—Decided October 25, 1954.

*Mr. Edward F. Juska* argued the cause for the appellants (*Messrs. Quinn, Doremus, McCue and Russell,* attorneys).

*Mr. George A. Gray,* Assistant Prosecutor of Monmouth County, argued the cause for the respondent (*Mr. J. Victor Carton,* Prosecutor; *Mr. John M. Pillsbury,* Assistant Prosecutor, on the brief).

The opinion of the court was delivered by

VANDERBILT, C. J.   The Monmouth County Grand Jury returned an indictment against the three defendants in 16 counts, two of which were dismissed by the trial court and are not involved here.   Of the remaining 14 counts seven involved the defendant Benjamin Fary, each charging that on a different occasion he obtained a check for the payment of money from the Township of Ocean by falsely representing that he had delivered various quantities of road gravel, when in fact no gravel had been delivered, all in violation of *N. J. S.* 2*A*:119–3.   The remaining seven counts charged the defendants Harry Fary and Bruce Vogel with aiding and abetting Benjamin Fary on each of these seven occasions, in violation of *N. J. S.* 2*A*:119–3 and *N. J. S.* 2*A*:85–14, but since these defendants admit that the merits of their motion to dismiss must rest upon the alleged invalidity of the seven counts against Benjamin Fary we shall necessarily limit our discussion to the seven counts of the indictment against him alone.   The motion to dismiss these counts was denied by the trial court, and since the order was not a final judgment the defendants applied to the Appellate Division of the Superior Court for leave to appeal pursuant to *R. R.* 3:5–5(*b*)(6).   In view of the public importance of the questions presented the State did not oppose the application, which was granted by the Appellate Division.   We certified the appeal on our own motion while it was pending in that court.

The defendants argue that the offense set forth in the indictment does not constitute a crime under the provisions of *N. J. S.* 2*A*:119–3 as charged:

"Any person who steals or takes by robbery or obtains possession of by false statements, representations or promises, any negotiable or non-negotiable instrument for the payment of money, or any cer-

tificate or other public security of the United States or of this state or of any other state of the United States, for the payment of money, or acknowledging the receipt of money or goods, being the property of any other person, notwithstanding said particulars, or any of them, are or may be termed in law choses in action, is guilty of a high misdemeanor."

but rather falls within the language of *N. J. S.* 2*A* :170–43, a section of the Disorderly Persons Law:

"Any person who, by means of any false statement made orally or in writing, obtains from the state of New Jersey or any county or municipality or from any officer, committee, commission or body thereof, or from any private or charitable organization or association of any kind, any money, personal property or other valuable thing, if the value or price thereof is less than $200, is a disorderly person."

The necessary elements of the crime set forth in *N. J. S.* 2*A* :119–3 are the obtaining through false statements or representations of a negotiable or non-negotiable instrument belonging to another. The seven counts of the indictment against Benjamin Fary all charge that the defendant "did falsely state and represent" that he had delivered a specified quantity of gravel, and as a result of such false statements and representations he "did obtain * * * a check and warrant for the payment of money, termed in law a chose in action * * * contrary to the provisions of *N. J. S.* 2*A* :119–3." It seems obvious that the crime charged clearly falls within the terms of this statute insofar as it relates to obtaining a negotiable instrument through false statements and representations.

But the defendants contend that the checks of the municipality were not "the property of any other person" and the defendant Benjamin Fary does not come within the terms of *N. J. S.* 2*A* :119–3. Their contention is that the checks upon delivery to Benjamin Fary became his property notwithstanding his fraud in procuring them without having delivered the road gravel to the municipality. This view ignores the hornbook law that the fraud of the vendee in acquiring title will vitiate his title. This rule applies equally to a check or other negotiable instrument as a chattel

where only the immediate parties to the instrument are concerned and the problem of a *bona fide* purchaser for value does not intervene. Thus Dean Ames in dealing with the question of title to negotiable instruments obtained by fraud states:

"As between the immediate parties, fraud and illegality in the transfer of bills and notes are attended by the same consequences as in the transfer of other chattels. * * *" *Cases on Bills and Notes* (1894), *p.* 882.

The law in this State on the point is in accord. Thus in *Holcomb v. Wyckoff*, 35 *N. J. L.* 35, 36–37 (*Sup. Ct.* 1870), an action was brought on two promissory notes made by the defendant to the order of one Farrington who was guilty of fraud in having the notes made out in his name. The notes through indorsements came into the hands of the plaintiff before maturity. The court in holding that the plaintiff as a *bona fide* holder for a partial consideration could recover the amount he had paid for the notes stated that as between the original parties the notes were "fraudulent and void" and "invalid." In *Sutter v. Security Trust Co.*, 96 *N. J. Eq.* 644 (*E. & A.* 1924), the court stated that "there can be no valid delivery where it [a check] was obtained by fraud, duress or mistake," delivery being essential for the legal transfer of title to any negotiable instrument, *R. S.* 7:2–30. See also *R. S.* 7:2–55:

"The title of a person who negotiates an instrument is defective within the meaning of this subtitle when he obtained the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud."

Clearly the checks in question on the facts before us were the property not of Benjamin Fary but of the Township of Ocean.

The defendants, however, claim that even assuming that the alleged offense falls within the prohibition of both of

these statutes, the defendants cannot be indicted under
*N. J. S.* 2*A*:119–3 because, where an act constitutes both
an indictable crime and also a violation of the Disorderly
Persons Law, prosecution will lie only under that law, rely-
ing on our decision in *State v. Maier*, 13 *N. J.* 235 (1953),
to the effect that an accused could no longer be charged and
tried for the indictable crime of simple assault and battery
because the Legislature had down-graded that crime to a dis-
orderly persons offense under *N. J. S.* 2*A*:170–26. Our
decision in that case necessarily depended upon the two
statutes there involved, *N. J. S.* 2*A*:85–1 and *N. J. S.*
2*A*:170–26, which when read together clearly reveal the legis-
lative intent to eliminate the indictable crime of simple
assault and battery in New Jersey and to make that offense
disorderly conduct, which carries a lesser penalty and can
be heard by a municipal magistrate sitting without a jury.
Specifically, *N. J. S.* 2*A*:85–1 provides that assault and
battery, as well as other offenses of an indictable nature at
common law, "not otherwise expressly provided for by stat-
ute" should be a misdemeanor, but since assault and battery
has been "otherwise expressly provided for by statute" in
*N. J. S.* 2*A*:170–26 of the Disorderly Persons Law, the
offense is no longer a misdemeanor and an indictable crime
in New Jersey. The statutory situation in the *Maier* case
is thus quite different from that confronting us here.

We are here concerned with the crime of obtaining a nego-
tiable instrument for the payment of money by false state-
ments or representations, a high misdemeanor under *N. J. S.*
2*A*:119–3. The statute had its origin in *chapter* 235 of the
*Laws of* 1898, was continued in the 1937 revision of statutes
as *R. S.* 2:145–3, and in the 1951 revision of *Title* 2 the
Legislature retained it with only slight changes as *N. J. S.*
2*A*:119–3. On the other hand, *N. J. S.* 2*A*:170–43 had its
origin in 1941, when it was first enacted as a part of a Dis-
orderly Persons Law, as *R. S.* 2:202–22.2. In the 1951
revision of *Title* 2 this provision with slight modifications,
including the raising of the amount involved from $100 to
$200, was carried over into *N. J. S.* 2*A*:170–43.

By leaving both statutes on the books in the 1951 revision of *Title 2* the Legislature clearly intended that the two offenses should remain, one as an indictable crime and the other as a disorderly persons offense. *N. J. S. 2A*:170–43 contains no express repealer of *N. J. S. 2A*:119–3, and clearly it is not so repugnant to the latter statute as to be an implied repealer of it, *State v. Shoopman*, 11 *N. J.* 333, 340 (1953); *Bruck v. The Credit Corp.*, 3 *N. J.* 401, 408 (1950). The fact that there is an area in which two statutes overlap and prohibit the same act, as in this case, does not mean that the defendant can only be prosecuted under the statute providing for the lesser penalty:

"Where Congress by more than one statute prescribes a private course of conduct, the Government may choose to invoke either applicable law: 'At least where different proof is required for each offense, a single act or transaction may violate more than one criminal statute.' *United States v. Beacon Brass Co.*, 1952, 344 *U. S.* 43, 45, 73 *S. Ct.* 77, [97 *L. Ed.* 61, 64]; see also *United States v. Noveck*, 1927, 273 *U. S.* 202, 206, 47 *S. Ct.* 341, 71 *L. Ed.* 610, [611]; *Gavieres v. United States*, 1911, 220 *U. S.* 338, 31 *S. Ct.* 421, 55 *L. Ed.* 489. Nor can the partial overlap of two statutes work a *pro tanto* repealer of the earlier Act. *Id.* 'It is a cardinal principle of construction that repeals by implication are not favored. When there are two acts upon the same subject, the rule is to give effect to both if possible. * * * The intention of the legislature to repeal "must be clear and manifest." * * * It is not sufficient * * * "to establish that subsequent laws cover some or even all of the cases provided for by [the prior act]; for they may be merely affirmative, or cumulative, or auxiliary." There must be "a positive repugnancy between the provisions of the new law, and those of the old." ' *United States v. Borden Co.*, 1939, 308 *U. S.* 188, 198, 60 *S. Ct.* 182, 188, 84 *L. Ed.* 181, 190." *Rosenberg v. United States*, 1953, 346 *U. S.* 273, 294, 73 *S. Ct.* 1152, 97 *L. Ed.* 1607, 1619.

The defendants further contend that even if the offense here charged does fall within the provisions of both statutes, the defendant Benjamin Fary can only be charged under the Disorderly Persons Law because that statute specifically covers the situation, while *N. J. S. 2A*:119–3 covers the allegation of the indictment only in general language. His argument is that "where there is a seeming conflict between

a general statute and a specific statute," the latter shall prevail over the former and shall be considered an exception to the general statute, citing *Goff v. Hunt,* 6 *N. J.* 600 (1951). We have no quarrel with the stated rule, but clearly it is not applicable here, for *N. J. S.* 2A:170–43 is not in all respects more specific than *N. J. S.* 2A:119–3. Although it specifically covers the offense where a municipality or an officer thereof is involved, it has a wider coverage than *N. J. S.* 2A:119–3 since it refers to "money, personal property or other valuable thing." On the other hand, *N. J. S.* 2A:119–3 specifically covers "negotiable or non-negotiable instrument for the payment of money," which is the subject matter involved in the charges against these defendants. Moreover, there is no conflict between these two statutes. Rather both, though different in several respects, by their terms happen to cover the conduct charged in the instant case. This is not an unusual occurrence and in such case the prosecutor has the option to invoke either applicable law, *United States v. Noveck,* 1927, 273 *U. S.* 202, 206, 47 *S. Ct.* 341, 71 *L. Ed.* 610, 611; *United States v. Beacon Brass Co.,* 1952, 344 *U. S.* 43, 45, 73 *S. Ct.* 77, 97 *L. Ed.* 61, 64; *Rosenberg v. United States, supra,* 1953, 346 *U. S.* 273, 294, 73 *S. Ct.* 1152, 97 *L. Ed.* 1607.

The offense set forth in the indictment falls within the provisions of *N. J. S.* 2A:119–3 and there is no reason for a dismissal of these counts. The fact that problems may arise as to the enforcement of these statutes is not a matter for judicial concern. As stated by Mr. Justice Heher in his opinion for the court in *State v. Labato,* 7 *N. J.* 137, 151 (1951), "this dual authority in matters of law enforcement undoubtedly gives rise to policy and administrative difficulties; but the remedy lies with the Legislature."

Lastly, the defendants argue that since two counts of the indictment were dismissed by the trial court the remaining counts must also be dismissed, claiming the defense of double jeopardy. This argument is clearly without merit, because the dismissal of the two counts was in no way a

disposition of the case on the merits. The defendants, not having been brought to trial, have not as yet been placed in jeopardy.

The order below is affirmed.

BURLING, J. (dissenting). I am not in agreement with the majority as to applicability of *N. J. S.* 2A:119-3. The offense described in *N. J. S.* 2A:119-3 appears to me to relate to the obtaining of negotiable or non-negotiable paper which is the property of another, *i. e.*, the title to which belongs in another. An example of this would be the obtaining by false pretense a negotiable instrument drawn to the order of a named drawee where the false pretense is the holding out by the accused that he is the named drawee when in fact he is not. *N. J. S.* 2A:119-3 is akin to larceny, as appears from the chapter heading in the statutes: "Chapter 119, Larceny and Other Stealings."

The offense charged in the indictment in the present case is obtaining money by false pretenses. The false pretense is not as to identity and the instruments involved were in fact drawn, and intended to be drawn, to the order of one of the defendants. The elements of offense described in the indictment conform to the elements required for charging the offense of obtaining money under false pretenses, the alleged fact being falsification of information concerning alleged materials furnished and work performed by the drawee of the instruments and his associates. The alleged facts spell out an offense in violation of *N. J. S.* 2A:111-1, which is set forth in the statutes under chapter 111 entitled: "Frauds and Cheats."

The resulting course in this case is to dismiss the present indictment with the observation, addressed to the attention of the prosecutor, that the crime alleged to have been committed appears to be an offense under *N. J. S.* 2A:111-1 and a new indictment under that statutory provision may be sought. The statute of limitation being five years, *N. J. S.* 2A:159-2, as amended by *L.* 1953, *c.* 204, § 1, effective June 30, 1953, such an indictment may still be found.

For the reasons above expressed I vote to reverse the order of March 23, 1954 of the Monmouth County Court insofar as that order denied the defendants' motion to dismiss the first, second, fourth, fifth, sixth, seventh, eighth, ninth, eleventh, twelfth, thirteenth, fourteenth, fifteenth and sixteenth counts of the indictment in question. These counts of the indictment should have been dismissed. The other two counts were dismissed by the trial court and that action was not a subject matter of this appeal.

Mr. Justice OLIPHANT authorizes me to state that he concurs in the views expressed herein.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, WACHENFELD, JACOBS and BRENNAN—5.

*For reversal*—Justices OLIPHANT and BURLING—2.