## STATE v. JAMES A. MATHIASEN.

141 N. W. (2d) 805.

March 25, 1966—No. 39,800.

*J. J. Larson,* for appellant.

*Robert W. Mattson,* Attorney General, *Gerard W. Snell,* Solicitor General, *Linus J. Hammond,* Assistant Attorney General, and *Roger J. Nierengarten,* County Attorney, for respondent.

THOMAS GALLAGHER, JUSTICE.

This is an appeal from a judgment of conviction based upon defendant's plea of guilty to an information charging him with the violation of Minn. St. 609.52, subd. 2(3)(a) (L. 1963, c. 753, § 609.52, subd. 2[3][a]). This statute provides:

"Whoever does any of the following commits theft and may be sentenced as provided in subdivision 3:

\* \* \* \* \*

"(3) Obtains for himself \* \* \* the possession \* \* \* or title to property of a third person by intentionally deceiving him with a false representation which is known to be false, made with intent to defraud, and which does defraud the person to whom it is made. 'False representation' includes without limitation:

"(a) The issuance of a check, draft, or order for the payment of money or the delivery of property knowing that he is not entitled to draw upon the drawee therefor or to order the payment or delivery thereof." [1]

Following conviction, defendant was sentenced in accordance with the provisions of Minn. St. 609.52, subd. 3(2, 4) (L. 1963, c. 753, § 609.52, subd. 3[2, 4]), which provides:

"Whoever commits theft may be sentenced as follows:

\* \* \* \* \*

"(2) To imprisonment for not more than five years or to payment of a fine of not more than $5,000, or both, if the value of the property or services is more than $100 but not more than $2,500; or

\* \* \* \* \*

---

[1] This covers the common-law offense of obtaining money by false pretenses and supersedes Minn. St. 622.01 and 622.03.

"(4) In all other cases where the value of the property or services is $100 or less, to imprisonment for not more than 90 days or to payment of a fine of not more than $100, provided, however, in any prosecution under clause (3) (a) of subdivision 2 hereunder the value of the money or property received by the defendant in violation thereof within any six month period may be aggregated and the defendant charged accordingly in applying the provisions of this subdivision."[2]

The information under which defendent was convicted set forth that within a 6-month period ending May 9, 1964, defendant had obtained with false representations merchandise and money of the aggregate value of more than $100 belonging to 12 named persons through the issuance of 13 bank checks (described by copies), each of which defendant knew to be false in that he well knew that he was not entitled to draw upon the drawee banks for the sums specified therein and was not entitled thereby to order the payment of the sums of money specified therein; and which false representations were made with intent to and did defraud the payees in such checks contrary to § 609.52, subd. 2(3)(a), said acts constituting theft.

At the time of his plea of guilty, defendant was represented by counsel and was questioned as follows:

"THE COURT: * * * Did you hear the reading of that Information, Mr. Mathiasen?

"THE DEFENDANT: Yes sir.

"THE COURT: Do you understand what it charges you with?

"THE DEFENDANT: Yes sir.

"THE COURT: In effect, it charges you with issuing a series of checks, 13 in number; is that your understanding?

"THE DEFENDANT: Yes sir.

---

[2] This provision was inserted to meet the objection that in eliminating the Habitual Offender Act for misdemeanors (formerly Minn. St. 1961, § 617.75; see, Minn. St. 609.155 [L. 1963, c. 753, § 609.155]), the new criminal code had not adequately provided against habitual bad-check writers who repeatedly wrote bad checks for less than $100. For discussion generally, see Pirsig, *Proposed Revision of the Minnesota Criminal Code,* 47 Minn. L. Rev. 417, 432.

376

"THE COURT: And it is alleged that in each instance you falsely represented the check to be valid, and knowing that that representation was false.

"THE DEFENDANT: Yes sir.

"THE COURT: Is that true in each instance?

"THE DEFENDANT: Yes sir.

"THE COURT: And you intended in each instance to defraud the person to whom the check was given?

"THE DEFENDANT: Yes sir.

"THE COURT: To get money or property from them?

"THE DEFENDANT: Yes sir.

"THE COURT: To which you knew you were not entitled?

"THE DEFENDANT: Yes sir.

\* \* \* \* \*

"THE COURT: Do you feel that he is sufficiently advised of the facts and of the law, Mr. Dehn [defendant's counsel], to plead to this Information?

"MR. DEHN: That's right, Your Honor. I have contacted him a number of times in the County Jail and I have gone over this with him. I have gone over the section of the statute pertaining to this offense under the new Criminal Code, and he was advised as to his rights, his constitutional rights, and after talking with him it was his desire to plead to the charge as set forth here.

\* \* \* \* \*

"THE COURT: How do you plead, guilty or not guilty?

"THE DEFENDANT: Guilty, Your Honor."

The court then ordered a presentence investigation. After the report of the investigation had been filed, the following proceedings took place on July 7, 1964, when defendant appeared for sentencing:

"THE COURT: Before sentence is imposed, Mr. Dehn, do you have anything to say on behalf of the defendant?

"MR. DEHN: \* \* \* I have seen this young man over at the County Jail several times. I have known him for a good number of years. I have represented him in other matters. I also knew his father and his mother. \* \* \* he admitted to me that he had written these checks, and that it

was his desire to plead to them; that the reason that he did this was that he was just out looking for work and he needed some money and he wrote these checks, which I thought was a foolish thing * * * and he admitted it. He has suggested to me and asked me to call the Court's attention to the fact that if the Court would see fit in the exercise of its discretion to allow him probation in this matter, that he would be able to return to work and make restitution for the checks that he has written. We make no excuse for the writing of the checks. * * *

\* \* \* \* \*

"MR. JOHNSON [assistant county attorney]: The State will abide by the recommendations of the pre-sentence investigation officer.

\* \* \* \* \*

"THE COURT: The following judgment and sentence will be entered:

"SENTENCE

"It is the judgment and sentence of the Court that defendant, James A. Mathiasen, having been duly convicted of a violation of Section 609.52, Subdivision 2 (3) (a), be committed to the custody of the Commissioner of Corrections for the State of Minnesota, for imprisonment until duly released by operation of law or act of the proper authority, but not to exceed a period of five (5) years, this sentence being authorized by Section 609.52, Subdivision 3 (2), the Court finding that the value of the property was more than $100.00 but not more than $2500.00.

\* \* \* \* \*

"IMPRESSIONS OF THE COURT

"It is the Court's impression that the length of time that the defendant should serve, within the limits authorized by law, be left to the discretion of the Commissioner of Corrections."

Thereafter, on December 15, 1964, defendant took the present appeal to this court, and on February 5, 1965, this court appointed as defendant's counsel Mr. J. J. Larson, an attorney of Sauk Centre.

Defendant again urges that the statute under which he was convicted was unconstitutional and that he was inadequately represented by counsel in the district court proceedings. He also urges that the information was defective because it charged him with more than one offense and

further that under Minn. St. 609.15[3] (L. 1963, c. 753, § 609.15) the maximum sentence that could have been imposed upon him for the misdemeanors described therein could not exceed one year.

■ We are of the opinion that § 609.52, subd. 3, under which defendant was sentenced, and the proceedings thereunder were valid in all respects. By its enactment of this statute the legislature has declared in substance that a person cashing a series of checks, aggregating in excess of $100 within a 6-month period, without sufficient funds on deposit to cover them respectively, is guilty of a felony. In so doing it has exercised its unquestioned authority to declare which acts or what course of conduct shall be deemed inimical to the public welfare so as to constitute a crime and to establish the appropriate punishment therefor. State v. Sobelman, 199 Minn. 232, 271 N. W. 484; State v. Cantrell, 220 Minn. 13, 18 N. W. (2d) 681. The responsibility of the courts with respect to such legislative authority is merely to determine whether in its exercise the legislature has denied any citizen any state or Federal constitutional right. State v. Sobelman, *supra;* State v. Cantrell, *supra;* State v. Northwest Poultry & Egg Co. 203 Minn. 438, 281 N. W. 753; State v. Suess, 236 Minn. 174, 52 N. W. (2d) 409.

■ Illustrative of this judicial function with respect to such legislative authority are decisions to the effect that it is within the legislative province to declare that certain acts may constitute or be parts of different offenses, State v. Kelly, 218 Minn. 247, 15 N. W. (2d) 554, 162 A. L. R. 477; State v. Dineen, 10 Minn. 325 (407); that the same acts may be offenses under different statutes, State v. Bolsinger, 221 Minn. 154, 21 N. W. (2d) 480; that it is not a defense to prosecution under one statute that an accused might have been prosecuted under another, State v. Seeling, 126 Minn. 386, 148 N. W. 458; that when a legislative act has for its purpose the prohibition of an undesirable form of conduct

---

[3] Minn. St. 609.15, subd. 2, provides: "If the court specifies that the sentence shall run consecutively, the total of the terms of imprisonment imposed, other than a term of imprisonment for life, shall not exceed 40 years. If all of the sentences are for misdemeanors the total of the terms of imprisonment shall not exceed one year; if for gross misdemeanors the total of such terms shall not exceed three years."

rather than a specific act, the definition by its very nature must be broad, State v. Eich, 204 Minn. 134, 282 N. W. 810; State v. Suess, *supra;* and that if it can be determined with reasonable certainty what conduct is subject to legislative disapproval, the statute defining the prohibited conduct will not be held unconstitutional on the ground of indefiniteness. State v. McCorvey, 262 Minn. 361, 114 N. W. (2d) 703.

■ Nor do we find that the information under which defendant was convicted was defective for duplicity. Therein there was described in detail the various checks, aggregating in excess of $100, cashed by defendant within a 6-month period without sufficient funds on deposit to cover any of them, which course of conduct the legislature has declared constitutes a felony. Certainly defendant must have understood from this information the charge made against him and the evidence he would have to present if he were to establish his innocence with respect thereto. No other method of describing the course of conduct constituting violation of § 609.52, subd. 2, punishable under subd. 3, could have been followed. In considering the question of duplicity, this court has stated in State v. Gopher Tire & Rubber Co. 146 Minn. 52, 58, 177 N. W. 937, 939:

"Generally speaking, where an offense consists of several distinct acts which are in fact to be construed, when taken together, as one continuous act, such acts may be charged in an indictment without making it subject to objection for duplicity."

See, also, State ex rel. Weich v. City of Red Wing, 175 Minn. 222, 220 N. W. 611.

■ Defendant contends finally that under § 609.15, subd. 2, the court could not sentence him in excess of 1 year. This statute provides that where a single information charges an accused with a number of misdemeanors and he is convicted thereunder, his total term of imprisonment shall not exceed 1 year. Here the information, while listing a series of misdemeanors committed by defendant, did not charge him with the commission of any misdemeanor, but rather charged him with the felony which arose from his commission of the sum total of the offenses described. From this it is clear that the provisions of § 609.15, subd. 2, would have no application.

Defendant's claim that he was inadequately represented by counsel arises from the fact that his counsel did not interpose any defense with respect to the validity of § 609.52, subd. 3; or any defense with respect to duplicity in the information; and that he did not invoke the limitation-of-sentence provisions of § 609.15, subd. 2, as above set forth. Our conclusion that such defenses would have been without merit is indicative that defendant's counsel was not derelict in his duty because he did not assert such defenses during the district court proceedings.

Affirmed.