## STATE v. CAROL KALVIG.

209 N. W. 2d 678.

June 22, 1973—No. 43552.

*Warren Spannaus,* Attorney General, *George M. Scott,* County Attorney, and *Henry W. McCarr, Jr.,* and *David G. Roston,* Assistant County Attorneys, for plaintiff.

*Jerry W. Snider,* for defendant.

PER CURIAM.

This matter is before this court to review an order dismissing charges of felonious theft against defendant who allegedly fraudulently received welfare payments under the Aid to Families with Dependent Children statutes. The trial court held that the

prosecution did not have discretion to prosecute defendant for felonious theft under the general theft statute since provisions in the welfare statutes made such alleged acts a misdemeanor. In dismissing the charges, the lower court certified the question to this court as important and doubtful pursuant to Minn. St. 632.10. We affirm.[1]

Defendant was charged on November 5, 1971, with theft under Minn. St. 609.52, subd. 2(3), for allegedly fraudulently receiving welfare payments. Minn. St. 609.52, subd. 2, provides in part as follows:

"Whoever does any of the following commits theft and may be sentenced as provided in subdivision 3:

* * * * *

(3) Obtains for himself or another the possession, custody or title to property of a third person by intentionally deceiving him with a false representation which is known to be false, made with intent to defraud, and which does defraud the person to whom it is made."

Defendant moved to dismiss the charges on the grounds that the exclusive procedure for prosecuting alleged frauds under the welfare statute was contained in Minn. St. 1969, § 256.83, which read as follows:

"Whoever obtains, or attempts to obtain, or aids or abets any person to obtain by means of a wilfully false statement or representation, or by impersonation, or other fraudulent device:

(1) Assistance to which he is not entitled;

(2) Assistance greater than that to which he is justly entitled; is guilty of a misdemeanor; and, upon the conviction

---

[1] Our decision here does not have any substantial precedential value with respect to welfare fraud because the current statute making such activity a misdemeanor, Minn. St. 1971, § 256.98, has been amended by L. 1973, c. 348, so as to make such activity a crime chargeable under our general theft statute, Minn. St. 609.52.

thereof, shall be fined not more than $100 or imprisoned for not more than three months." [2]

The state contended that it had prosecutorial discretion to proceed under either statute. The trial court rejected this argument and dismissed the charges. It then certified to this court the following question:

"May an Aid to Families with Dependent Children recipient, who is alleged to have misrepresented her eligibility for welfare, and who as a result of such misrepresentation receives unauthorized public funds, be prosecuted, at the discretion of the County Attorney, under the general felony theft statute, Minnesota Statutes, Sec. 609.52, Subd. 2(3), instead of under Minnesota Statutes, Sec. 256.83?"

The theft statute, Minn. St. 609.52, was adopted in 1963 as part of our criminal code. The portion under which defendant has been charged has not been amended. There is no need to discuss at length which section involved herein was first enacted. It is clear and undisputed that the theft statute is one of general

---

[2] Minn. St. 1969, § 256.83, was repealed by L. 1971, c. 550, § 2, and Minn. St. 1971, § 256.98, was enacted as a successor statute by L. 1971, c. 550, § 1, to read as follows: "Whoever obtains, or attempts to obtain, or aids or abets any person to obtain by means of a wilfully false statement or representation, or by impersonation or other fraudulent device assistance to which he is not entitled, or assistance greater than that to which he is entitled, or knowingly aids or abets in buying or in any way disposing of the property of a recipient of assistance without the consent of the county agency with intent to defeat the purposes of sections 256.451 to 256.475, 256.13 to 256.43, 256.49 to 256.71, 256.72 to 256.87, or chapter 256B, shall be guilty of a misdemeanor. The amount of any assistance paid incorrectly by way of the aforementioned means and established by judicial determination shall be recoverable from the recipient or his estate by the county as a debt due the county. Any amounts recovered shall be paid to the appropriate units of government in the same manner as provided in section 256.863."

application, while the statute referring to punishment for welfare fraud is a specific provision. In interpreting such apparently conflicting legislation, § 645.26, subd. 1, is applicable. It provides as follows:

"When a general provision in a law is in conflict with a special provision in the same or another law, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions be irreconcilable, the special provision shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted at a later session and it shall be the manifest intention of the legislature that such general provision shall prevail."

A careful analysis of the welfare fraud provisions would lead to a determination that it was a subsequently enacted statute. However, even if this conclusion were not proper, the provisions of § 645.26, subd. 1, quoted above would be applicable since the general theft statute, if subsequently enacted, does not manifest any intention of the legislature that such general provision shall prevail. Rather, the contrary appears. The Advisory Committee Comments on § 609.52, 40 M. S. A. p. 447, indicate that certain statutes relating to larceny not appearing in the criminal code are not affected by the provisions and particularly refer to § 256.83 (now replaced by § 256.98). The Advisory Committee wrote that "[§ 256.83] deals with the same subject and makes the crime a misdemeanor."

The legislature has indicated a clear and express intention to deal with alleged welfare frauds as a misdemeanor. In Beck v. Groe, 245 Minn. 28, 41, 70 N. W. 2d 886, 895 (1955), our court spoke to the question of conflicts between general legislation and specific provisions, stating:

"* * * [T]he rule that the provisions of a complete and specific act in and of itself controls a prior and general provision is applicable. When this situation arises, the general provision must give way to the specific act and it is thus modified or

amended to that extent. Specific provisions in a statute control general provisions. The principle of construction that specific terms covering the given subject matter will prevail over general language of the same or another statute which might otherwise prove controlling is well settled. If there is conflict between different statutes as to the same matter, the later statute prevails. [Cases omitted.]"

The trial court in its memorandum accompanying its order discussed the legislative policy involved and said:

"* * * The legislature may have believed that it would not be in the public interest to deprive the children of the care of their mother for long periods of time or that it would not be in the interest of the children to impose the stigma of a felony conviction on the mother."

This analysis is consistent with the policy statement the legislature itself set forth in Minn. St. 256.85, which provides as follows:

"Sections 256.72 to 256.87 shall be liberally construed with a view to accomplishing their purpose, which is hereby declared to be to enable the state and its several counties to cooperate with responsible mothers or relatives in rearing future citizens, when such cooperation is necessary on account of relatively permanent conditions, in order to keep the family together in the same household, reasonably safeguard the health of the mother and secure to the children during their tender years her personal care and training."

We hold that the legislative policy set forth in our statute prohibits prosecutorial discretion in bringing charges against alleged fraudulent recipients of welfare benefits. We are not unmindful of the seriousness of the allegations in this case, which allege that defendant wrongfully received $2,457.35. The policy determination as to the method of proceeding against parties who fraudulently obtain substantial amounts of welfare benefits is solely a matter for legislative determination. To allow the prosecution to exercise discretion in the light of our former

statutory language would shift this policy determination to the office of the prosecutor. For alleged acts of welfare fraud occurring prior to the effective date of L. 1973, c. 348, prosecutions must be made under the specific welfare fraud provision.

Other jurisdictions have considered this problem. In People v. Gilbert, 1 Cal. 3d 475, 82 Cal. Rptr. 724, 462 P. 2d 580 (1969), the California court addressed itself to a situation which is virtually indistinguishable from this case. The California statutes were similar, and the court in holding that prosecution had to be made under the specific provisions of its welfare fraud statute said (1 Cal. 3d 479, 82 Cal. Rptr. 727, 462 P. 2d 583) :

"* * * It is the general rule that where the general statute standing alone would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after such general enactment."

The California court concluded (1 Cal. 3d 481, 82 Cal. Rptr. 728, 462 P. 2d 584) :

"* * * [I]t follows that any conduct which violated [the welfare fraud statute] would also constitute a violation of the theft provision of the Penal Code. This overlap of provisions carrying conflicting penalties typifies the kind of conflict which we envisioned in [In re Williamson, 43 Cal. 2d 651, 276 P. 2d 593 (1954)] ; it requires us to give effect to the special provision alone in the face of the dual applicability of the general provision of the Penal Code and the special provision of the Welfare and Institutions Code."

The state in its brief cites State v. Fary, 16 N. J. 317, 108 A. 2d 593 (1954), in its support. An examination of this case indicates that Fary supports the position of defendant rather than that of the state. The court agreed with the rule that "where there is a seeming conflict between a general statute and a specific statute," the latter shall prevail over the former and shall be considered an exception to the general statute.

The state also cites certain New York cases—People v. Lubow, 29 N. Y. 2d 58, 272 N. E. 2d 331 (1971); People v. Gulisano, 57 Misc. 2d 243, 292 N. Y. S. 2d 545 (1968); and other cases from the highest court and the intermediate courts of New York. These cases do indicate some support for the position of the state; but our statutory and case law history clearly indicate a support for the doctrine that the specific statute controls the general statute, unless the legislature manifestly indicates its intention that the latter shall be controlling. When these factors are added to the reasonable inference that the legislature intended to place possible welfare violators in a different classification than that of general theft, because of (a) the low socio-economic position the alleged violators hold; (b) their possible ignorance of the law; (c) the welfare of their children; and (d) possible unintended mistake in filling out welfare forms, it dictates an affirmance of the trial court.

Affirmed.

ROGOSHESKE, JUSTICE (concurring specially).

I concur in the result.

KELLY, JUSTICE (dissenting).

I disagree that the welfare fraud statute, Minn. St. 1969, § 256.83 (now Minn. St. 256.98), proscribing the receipt of unauthorized welfare assistance through false statements and representations, precludes prosecution under our general theft statute, Minn. St. 609.52, subd. 2(3), when the misconduct also constitutes a violation of that statute. To adopt such a result in this case without a clear legislative mandate could preclude in future cases the prosecution of some heinous crime as a felony under an appropriate statute merely because the defendant's misconduct simultaneously violated a statute prescribing punishment as a misdemeanor. This intention should not be attributed to the legislature unless it is clearly manifested.

The majority assumes that because the same act is prohibited under both the welfare fraud statute and the theft statute, the

statutes are in conflict and the former must control. I concede that the statutes overlap in part, but not that they are in conflict. Rather obviously, the statutes are not in conflict if we assume that the prosecution has discretion of charging under one or the other. If the prosecution has no such discretion, then and then only are they in conflict. Thus, the reasoning becomes circular. I say the statutes are not in conflict because the prosecution should have discretion to use either one. In effect, the majority says the prosecution has no discretion because the statutes are in conflict and that reasoning then, too, becomes circular.

The majority opinion, based on its premise that there is a conflict in the legislation, cites Minn. St. 645.26 as an aid in determining which statute shall be controlling. However, assuming arguendo a conflict in the two statutes, the first mandate in § 645.26, is that the "* * * two shall be construed, if possible, so that effect may be given to both." If we hold that the prosecution has the discretion to charge under either statute, we do give "effect" to "both." Under § 645.26, it is only if "* * * the conflict between the two provisions be irreconcilable, the special provision shall prevail * * *." The two statutes are not irreconcilable if we hold that the prosecution may use either in his discretion.

Minn. St. 1969, § 256.83, by stating that its provisions apply exclusively to welfare fraud, does not expressly repeal Minn. St. 609.52, subd. 2(3), to the extent the latter affects cases involving welfare fraud.[1] Furthermore, it is well settled that repeals by implication are not favored. E. g., State v. Holt, 69 Minn. 423, 72 N. W. 700 (1897).

The majority relies on the theory that, where both a general and a more specific statute apply to the same misconduct, the

---

[1] The Advisory Committee Comments to Minn. St. 609.52, 40 M. S. A. p. 447, in which the majority finds support, is at best equivocal. By listing § 256.83 among those statutes not appearing in the criminal code and not affected by the revision, the committee could equally have meant that prosecution could proceed under either statute.

more specific should alone be controlling. Other cases have held that where two statutes, each of which proscribes some conduct not covered by the other, overlap a violator can be prosecuted under either statute. United States v. Lamb, 150 F. Supp. 310 (N. D. Cal. 1957). As stated in State v. Holt, 69 Minn. 423, 425, 72 N. W. 700, 701 (1897):

"It is well settled that the same act may constitute an offense * * * under several different statutes, and the prosecutor may proceed under whichever law or statute he sees fit."

In the more recent decision of State v. Mathiasen, 273 Minn. 372, 378, 141 N. W. 2d 805, 810 (1966), we said:

"* * * [I]t is within the legislative province to declare that certain acts may constitute or be parts of different offenses, State v. Kelly, 218 Minn. 247, 15 N. W. (2d) 554, 162 A.L.R. 477; State v. Dineen, 10 Minn. 325 (407); that the same acts may be offenses under different statutes, State v. Bolsinger, 221 Minn. 154, 21 N. W. (2d) 480; that it is not a defense to prosecution under one statute that an accused might have been prosecuted under another, State v. Seeling, 126 Minn. 386, 148 N. W. 458 * * *."

In view of this pronouncement in Holt in 1897, and the Minnesota cases since that date that have approved it, it is a fair assumption that the legislature assumed that prosecutors were being given that discretion and intended that very result.

The statutes under consideration here, namely, Minn. St. 1969, § 256.83, and Minn. St. 609.52, subd. 2(3), are not identical in scope. Under the latter statute, an offense is complete only if the property is actually obtained. Under the welfare fraud statute, however, the false statements or representations need not be successful in accomplishing their objective. An offense is complete if such statements are used in an attempt to receive unauthorized aid. Consequently, the statutes are not in conflict and Minn. St. 1969, § 256.83, does not impliedly repeal Minn. St.

609.52, subd. 2(3). Rather, the statutes merely overlap and, under decisions of this court, prosecution may be under either statute.

The majority follows the result of People v. Gilbert, 1 Cal. 3d 475, 82 Cal. Rptr. 724, 462 P. 2d 580 (1969), finding that the California welfare fraud statute was "virtually indistinguishable" from our statute. However, there is a distinction between the statutes which was the very reason for the result in the Gilbert case. The California statute contains two separate clauses: (1) making false statements or representations to obtain aid; (2) attempting to obtain unauthorized aid.[2] The court specifically construed the clause relating to false statements to apply only when aid was actually obtained and not to apply to "attempts" to gain unauthorized aid by false statements. Under this construction, the court concluded:

"Inasmuch as the clause as to false statements applies only to statements made *in obtaining* unauthorized assistance, it follows that any conduct which violated that clause would also constitute a violation of the theft provision of the Penal Code." 1 Cal. 3d 481, 82 Cal. Rptr. 728, 462 P. 2d 584.

Minn. St. 1969, § 256.83, is not so drafted and an offense would be complete if false statements were used in an attempt to obtain aid improperly even though unsuccessful. The scope of the statute is therefore different than the theft statute and the Gilbert decision is not convincing authority.

Later California appellate court decisions have distinguished Gilbert on this basis recognizing that the rule of that case does not apply if the scope of both statutes is not identical. If one statute proscribes some conduct which the other does not, the rule

---

[2] Cal. Welf. & Inst'ns. Code, § 11482 (West 1972), provides: "Any person * * * who willfully and knowingly * * * makes a false statement or representation or knowingly fails to disclose a material fact to obtain aid, or who, knowing he is not entitled thereto, attempts to obtain aid * * * is guilty of a misdemeanor."

does not apply. People v. Lustman, 13 Cal. App. 3d 278, 91 Cal. Rptr. 548 (1970) (fraudulently obtained disability and unemployment insurance benefits); People v. Cohen, 12 Cal. App. 3d 298, 90 Cal. Rptr. 612 (1970) (false insurance claim). Both of these decisions recognized that a violation of the general theft statute was complete only upon an actual "taking" whereas the special statutes involved did not require success to complete the offense.

The Supreme Court of New Jersey reached the same conclusion in the recent case of State v. Covington, 59 N. J. 536, 537, 284 A. 2d 532, 533 (1971), where they said:

"* * * [T]he Legislature did not intend to mandate a prosecution only under the bad check statute whenever a bad check is used in furtherance of an intent to defraud. In reaching that conclusion, we would stress that the ingredients of the statutory offenses are not the same, [citations omitted] for although both statutes require an intent to defraud, the false pretense statute requires, and the bad check statute does not, proof that the offender succeeded in obtaining something he was after. [Citation omitted.] The statutes thus may *overlap*, depending upon the facts, but we find nothing on the face of the statutes to evidence a legislative purpose to compel resort to the bad check statute even though the facts come also within the false pretense act. Rather, we conclude the Legislature left it to the sound discretion of the prosecutor to proceed under either of the statutes in such circumstances." (Italics supplied.)

Although, as stated by the majority, the earlier New Jersey decision of State v. Fary, 16 N. J. 317, 108 A. 2d 593 (1954), recognized that a specific statute controls a general one, they clearly held the rule inapplicable in that case because the allegedly special statute was not in all respects more specific. Therefore, the case held that the statutes were not in conflict and the prosecutor had the option to invoke either applicable statute.

I would dissent in this case even if Minn. St. 1969, § 256.83, and Minn. St. 609.52, subd. 2(3), were identical in scope. I think that other courts confronted with overlapping statutes, to avoid an otherwise undesirable result, have looked for distinctions in the statutes even if they did not substantially differ.

I would hold that the statutes are not in conflict but merely overlap, permitting the prosecutor the discretion to proceed under either. Indeed, such an option allows more flexibility in matching a penalty which is commensurate with the culpable acts involved. See, State v. Jones, 289 Minn. 22, 183 N. W. 2d 282 (1970). In State v. Anderson, 280 Minn. 461, 159 N. W. 2d 892 (1968), this court quoted with approval from a United States Circuit Court of Appeals opinion by Mr. Justice (now United States Supreme Court Chief Justice) Warren Burger:

" 'To say that the United States Attorney must literally treat every offense and every offender alike is to delegate him an impossible task; of course this concept would negate discretion. Myriad factors can enter into the prosecutor's decision. Two persons may have committed what is precisely the same legal offense but the prosecutor is not compelled by law, duty or tradition to treat them the same as to charges. On the contrary, he is expected to exercise discretion and common sense to the end that if, for example, one is a young first offender and the other older, with a criminal record, or one played a lesser and the other a dominant role, one the instigator and the other a follower, the prosecutor can and should take such factors into account; no court has any jurisdiction to inquire into or review his decision.' " 280 Minn. 464, 159 N. W. 2d 895.

The policy argument of the majority that precluding possible felony convictions of mothers is in the best interest of children breaks down since not all violators of the welfare fraud statute are necessarily mothers. Minn. St. 256.98 applies generally to all cases of wrongfully obtaining assistance. Furthermore, in those cases where keeping children with their mothers is desired, the trial court can accomplish this by a stay of the imposition

of sentence and placing the defendant on probation. Any felony record can be avoided in appropriate cases in the discretion of the judge. This, plus the discretion placed in the prosecutor, will allow the necessary flexibility to impose appropriate punishments under the facts of each case. In fact, the trial judge in his memorandum stated that prosecutorial discretion in practice had been working out very well. In any event, there is no reason to suppose that the legislature, by enacting a welfare fraud provision, mandated that every swindle within the scope of the theft statute must be dealt with more lightly merely because the fraud involved welfare funds. In fact, § 609.52 appears clearly to indicate that the legislature intended that thefts of public funds from the state or any political subdivision or agency thereof be considered to be of grave consequences by making such thefts a felony even though the value of the funds taken be $100 or less.

The most devastating effect of the majority decision is that of establishing the general rule that the more specific statute should control the more general. I do not know how many statutes now in existence may be affected by such a general rule, or the statutes that may be affected in the future through some inadvertent act of the legislature. It may well be that where one statute is repugnant to the other, such a rule might be acceptable but such is not the case before us.

The theft charged in the instant case was in the amount of $2,457.35, a substantial amount—more than the minimum of $100 normally considered the dividing line between a misdemeanor or a felony. The next case involving the same issue might involve many times the amount here involved, and the accused may not be a mother. I cannot imagine that the legislature would want such a case prosecuted as a misdemeanor.

I would reverse the court below and adopt the rationale of the New York and New Jersey courts.[3]

---

[3] The majority decision states that a careful analysis of the welfare fraud provisions would lead to a determination that it was a subse-

408 ■

Peterson, Justice (dissenting).

I join in the dissenting opinion of Mr. Justice Kelly.

---

quently enacted statute. The state's brief in this connection points out that: "Minn. St. § 256.83, providing for misdemeanor penalties for those who obtain welfare assistance by fraud, was originally enacted in 1937 (Laws, Minnesota 1937, c. 438, § 15). Minn. St. § 256.83 was replaced by Minn. St. § 256.98 (Laws, Minnesota, 1971, c. 550) on May 26, 1971—some four months prior to the initiation of the criminal proceedings in the case at hand. However, § 256.98 is merely a consolidation of five prior laws: Minn. Sts. §§ 256.83 (referring to welfare fraud); 245.34 (referring to fraud in obtaining assistance to disabled persons); 256.31 (referring to fraud in obtaining old age assistance); 256.68 (referring to fraud in obtaining aid to the blind); and 256B.16 (referring to fraud in obtaining medical aid assistance). The substance of former § 256.83 and the four other predecessor statutes *remains unaltered.*

"Minnesota's theft statute (§ 609.52), under which this defendant is charged, was enacted in 1963 as part of the new Criminal Code. The theft statute was amended no less than three times by the 1971 Legislature: (1) c. 717, approved June 3, 1971, changed the definition of 'value'; (2) c. 796, approved June 4, 1971, made retention of leased or rented property beyond the date of the lease or agreement a crime; and (3) c. 697, approved June 3, 1971, provides for aggregating separate thefts in different counties for penalty purposes. Thus, the theft statute, with its amendments, *is still the law* 'latest in date of final enactment,' and is controlling."

Presumably, not only mothers, but all persons obtaining welfare assistance by fraud under all of the categories under Minn. St. 1971, § 256.98, and the five predecessor statutes could only be charged with a misdemeanor under the rationale of the majority opinion.