Douglas Leo PAHL, Petitioner, Respondent,

v.

COMMISSIONER OF PUBLIC SAFETY, Appellant.

No. C5–86–833.

Court of Appeals of Minnesota.

Dec. 30, 1986.

David T. Erickson, Excelsior, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Joel A. Watne, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Considered and decided by WOZNIAK, P.J., and NIERENGARTEN and RANDALL, JJ., with oral argument waived.

## OPINION

RANDALL, Judge.

Respondent Douglas Leo Pahl's driving privileges were revoked for an implied consent violation. The trial court rescinded the revocation, and the Commissioner of Public Safety appeals. We affirm.

## FACTS

Deputy Sheriff Harold Harvey Holk received a call on January 11, 1986, to investigate a snowmobile accident on Mille Lacs Lake, approximately one-fourth to one-half mile east of the Blue Goose Inn. The police department received the call around 1:30 a.m. Holk testified that the accident occurred less than ten minutes prior to the call.

When Holk arrived on the scene, he found four people and four snowmobiles; two of the people were injured, including respondent Pahl. Holk described the damage to the snowmobiles: one was missing a track and had sustained damage to the back end of the sled; the other was damaged on the front right portion of the sled and its windshield was broken. Holk testified that respondent was in considerable pain, smelled strongly of alcohol, and was excited. He later noticed that respondent's face was flushed and his eyes appeared bloodshot and watery.

Holk spoke with two other men at the scene. One of them, Mark Thielen, told Holk that the two parties involved in the accident had left the Blue Goose Inn ahead of him. Thielen went to Mille Lacs Lake where he saw the accident. He returned to the Blue Goose where he told a Mr. Hess about the incident, and brought Hess to the scene.

Holk testified that he had no indication anybody was drinking at the scene of the accident itself, nor did he receive information which would lead to him to believe Pahl and Cooper, the other driver involved in the accident, were not driving the two snowmobiles at the time of the collision.

Holk testified that when the ambulance arrived near the scene, respondent had to be transported to the ambulance in a sled attached to a snowmobile. After respondent arrived at the hospital, Holk read him the implied consent advisory. Holk determined that respondent was not in a position to consent to or refuse testing, and ordered a blood sample taken.

On cross-examination, Holk was asked whether it was true that Pahl and Thielen were fixing the snowmobile track at the time it was hit; Holk said not according to what he was told at the accident scene. Holk acknowledged that, based on the damage to the snowmobile, the accident could have happened that way, and Pahl could have been a pedestrian. On redirect examination, Holk testified that he did not receive any information from Thielen or anyone else at the scene suggesting that Thielen had been present at the collision, or suggesting that respondent was a pedestrian. Based on information he had gathered at the scene, Holk testified that respondent had been drinking at the Blue Goose Inn. According to what Thielen told Holk at the scene, Thielen was not present at the time of the accident. Holk later learned that Thielen had changed his account.

Alphonse Welle, the land management supervisor for the Minnesota Department of Transportation in the Brainerd area, testified that the right-of-way for Highway 169 extends in the area of the Blue Goose Inn. In this area, the right-of-way extends fifty feet westerly of the central line and 167 feet easterly, out into the lake. The right-of-way contains portions of both improved and unimproved land.

Brad Burgraff, the regional enforcement supervisor for the Department of Natural Resources region which includes the Brainerd area, testified that all of Lake Mille Lacs is public property and is open to members of the public in the wintertime, as a matter of right, for snowmobile traffic or for whatever vehicles people might wish to drive on the ice.

The Blue Goose Inn is one-fourth to one-half mile west of the accident scene. Highway 169 passes between the Blue Goose and the lakeshore. Holk testified on the possible locations a snowmobile could be parked near the Blue Goose. It could be parked in the Blue Goose parking lot. In order to reach Mille Lacs Lake from the lot, a driver would have to cross Highway 169. A snowmobile could also be parked on the lake side of Highway 169. If parked there, however, it would have to have been parked close to the road, because there was an ice buildup from the wind on the lake. On cross-examination, he said snowmobiles could be parked anywhere, and he had no idea whether respondent drove the snowmobile across the road. Holk testified that Mille Lacs Lake is publicly owned and, to his knowledge, the public is free to drive onto the ice with snowmobiles and other vehicles.

The trial court determined that Lake Mille Lacs was not a public street or highway, and further determined that the Commissioner did not meet his burden of proving that respondent had parked his snowmobile either in the Blue Goose parking lot or on the highway right-of-way. The trial court rescinded the revocation, and the Commissioner of Public Safety appeals.

**ISSUES**

1. Did respondent operate his snowmobile in an area which subjected him to the implied consent law, Minn.Stat. § 169.123 (1985)?

2. Is Lake Mille Lacs a public street or highway?

**ANALYSIS**

**I.**

*Area of operation*

The basic issue presented on appeal is whether respondent operated a snowmobile in an area which subjected him to the implied consent law. It is clear that if the snowmobile was operated on a street or highway, the operator of the snowmobile is subject to the implied consent law. *Melby v. Commissioner of Public Safety*, 367

N.W.2d 527, 528 (Minn.1985); Minn.Stat. § 84.87, subd. 1(e) (1984); Minn.Stat. § 169.123 (1984 & Supp.1985). The Commissioner first argues respondent operated his snowmobile on Highway 169 or its right-of-way. He contends that the most obvious place for respondent to park was in the Blue Goose parking lot. If respondent parked there, he had to cross Highway 169 to reach the lake and the accident scene. Thus, the Commissioner argues that respondent would have operated his snowmobile on a street or highway, or within the street's right-of-way, and the implied consent law would apply. *Id.*

The Commissioner also argues that if respondent, instead, parked in the area between the roadway and the edge of the lake, he was still on the highway right-of-way. The Minnesota Department of Transportation supervisor testified that at that point the right-of-way extends 167 feet to the east of the center line, beyond the shoreline and into the lake.

■ Minn.Stat. § 169.01, subd. 29 (1984) defines "street or highway" to include

the entire width between boundary lines of any way or place when any part thereof is open to the use of the public, as a matter of right, for the purposes of vehicular traffic.

In *Melby*, the supreme court, noting that the term "roadway" is more restrictive than "street or highway," stated, " '[s]treet or highway' refers to the entire right of way." *Melby*, 367 N.W.2d at 529.[1]

■ Here, after the evidence was heard, the trial court found:

There is no direct testimony where petitioner parked or drove his snowmobile on the night in question. The testimony of the Officer that the petitioner parked the snowmobile in the Blue Goose parking lot and drove it across highway 169 or parked the snowmobile on [the] high-

way right of way while drinking at the Blue Goose is pure speculation and conjecture and is not supported by circumstantial evidence. It is just as possible that the snowmobiles were parked on the lake outside of the highway right of way.

In its order, the trial court stated that all doubts[2] should be resolved in favor of the petitioner, and the Commissioner argues that the court applied the wrong standard of proof. We do not agree and give the trial court the benefit of the doubt, and find that it correctly meant that the Commissioner has the burden of proof by a preponderance of the evidence. The trial court's determination, that it was "just as possible" the snowmobiles were parked outside the highway right-of-way, indicates the correct standard of preponderance of the evidence was used.

■ The trial court found that the deputy did not testify to any solid evidence, substantial or direct, as to where respondent's snowmobile was *actually* parked. Giving the trial court the deference we do on disputed issues of fact and credibility of oral witnesses, we cannot say that on this fact issue the trial court was clearly erroneous.

The Commissioner also argues that the trial court improperly insisted that only direct evidence could be used to satisfy the burden of proof. We do not agree. The trial court specifically found that neither direct nor circumstantial evidence were present to show where respondent parked or drove his snowmobile.

## II.

*Is Lake Mille Lacs a public street?*

■ The Commissioner next contends that the trial court erred as a matter of law when it determined the lake was not a public street or highway. The Commission-

---

1. In summary, a street or highway includes the entire area, both on and off the road, including right-of-way, and roadway means only that portion of the highway meant for the actual vehicular traffic. *See* Minn.Stat. § 169.01, subds. 29 and 31.

2. The Commissioner argues that the trial court's use of words meant it was applying the criminal standard of "beyond a reasonable doubt" whereas the legal standard for implied consent cases is "preponderance of the evidence."

er argues that because the lake is a place, open to the public as a matter of right for purposes of vehicular traffic, it literally falls within the definition of "street or highway." Minn.Stat. § 169.01, subd. 29. The trial court rejected this argument. We also decline to adopt it. We do not believe that the construction of a statute should be so strained.

The Commissioner argues, based on Burgraff's testimony, that once the waters of any lake freeze and the public can drive anywhere on that lake to go fishing, since the lakes in this state are open to the public for fishing, the conclusion must be that all lakes are streets or highways. We do not agree with this broad interpretation. The statutes and legislative history of Minnesota defining and regulating this state's policy of preserving and administering navigable waters and the land beneath, attach to and define far different policy considerations than those statutes that direct the flow of traffic on public streets or highways.

If streets, highways, and lakes, whether frozen or not, were synonymous terms, the legislature presumably would not have had to specifically prohibit boating while under the influence, Minn.Stat. § 361.12, *amended by* 1986 Minn.Laws ch. 401, § 2, and enact a law providing chemical testing for boaters. 1986 Minn.Laws ch. 401, § 3 (to be codified at Minn.Stat. § 361.121). If the Commissioner's argument about Lake Mille Lacs is correct, the much older statutes pertaining to drinking and driving on the highways and the implied consent law would always have been sufficient to regulate conduct on water, and it would have been superfluous for the legislature to specifically prohibit boating while intoxicated and extend to law enforcement the right to utilize the implied consent proceedings with boaters.

If it is the intent of the legislature to treat the water on public lakes, whether in summer or winter, as synonymous with public streets or highways, it will have to be by specific legislative direction. We will not do it as an appellate court.

Finally, the Commissioner argues that the legislature made several changes in response to *Melby* which establish the applicability of the DWI and implied consent statutes to snowmobiles operated anywhere within the state. 1985 Minn.Laws, 1 Sp. Sess. ch. 4, §§ 2, 4, 5. The following changes, relevant to the discussion here, were made. The legislature amended Minn.Stat. § 169.02, subd. 1(2) (1984) as follows (additions are indicated by underline and stricken provisions are indicated by a broken line through the words):

> The provisions of sections 169.09 to 169.13 ~~shall~~ apply ~~upon highways and elsewhere throughout the state~~ to any person who drives, operates, or is in physical control of a motor vehicle within this state or upon the ice of any boundary water of this state.

1985 Minn.Laws, 1 Sp. Sess. ch. 4, § 2.

Minn.Stat. § 169.121, subd. 1 (1984) was amended as follows:

> It is a misdemeanor for any person to drive, operate or be in physical control of any motor vehicle within this state or upon the ice of any boundary water of this state * * *.

*Id.* § 4.

The following portion was removed from the law:

> ~~The provisions of this subdivision apply, but are not limited in application, to any person who drives, operates, or is in physical control of any motor vehicle in the manner prohibited by this subdivision upon the ice of any lake, stream, or river, including but not limited to the ice of any boundary water.~~

*Id.*

Minn.Stat. § 169.123, subd. 2(a) was amended as follows:

> Any person who drives, operates, or is in physical control of a motor vehicle within this state or upon the ice of any boundary water of this state consents * * * [to chemical testing].

*Id.* § 5.

The legislature did not, however, enact an amendment to Minn.Stat. § 84.87, subd. 1(e) (1984), which provides:

All provisions of chapter 169 shall apply to the operation of snowmobiles upon streets and highways, except for those relating to required equipment, and except those which by their nature have no application.

Consequently, we are faced with an issue as to whether the holding in *Melby* still stands, "that for Minn.Stat. § 169.123 (1984) to apply, the snowmobile must be operated on a street or highway," *Melby,* 367 N.W.2d at 528, or whether the amendments found in chapter 169 apply, subjecting drivers who operate snowmobiles "anywhere within the State or upon the ice of any boundary water of the State" to the implied consent law as are motor vehicle operators.

In *Melby,* the supreme court found chapter 169 inapplicable to snowmobile operations unless the operation was on a street or highway. *Melby,* 367 N.W.2d at 529. It determined this interpretation gave effect to the provisions of chapters 84 and 169, *see* Minn.Stat. § 645.16, and placed greater emphasis on the more specific of the two statutory provisions. It held:

> Thus, unless Melby was, in fact, driving his snowmobile on a "street or highway," the trial court's order rescinding the Commissioner's license revocation should be sustained.

*Id.* at 529.

The legislative changes which apparently broaden the applicability of the implied consent law are general provisions enacted at a later session. Those provisions would prevail over the specific provision regarding snowmobiles if the legislature manifested such an intent. Minn.Stat. § 645.26 (1984); *see State v. Kalvig,* 296 Minn. 395, 398, 209 N.W.2d 678, 680 (1973). The legislative changes did not specifically address snowmobiles, and the provision in § 84.87 that "chapter 169 shall apply to the operation of snowmobiles *upon streets and highways* " (emphasis added) has remained unchanged. If this court found that the operation of snowmobiles "any place within the State" subjects a driver to the implied consent law, the emphasized provision in

§ 84.87 would be meaningless. Consequently, we find that the legislature did not exhibit a manifest intent that the general provision should prevail.

While the interplay between the statutes governing DWI, implied consent, snowmobiles, water, and streets and highways is perhaps not as clear as it could be, we hold that chapter 169 applies only to snowmobiles operated on streets or highways. We hold that public lakes are not streets or highways for snowmobiles. We must wait for enactment of additional legislation before the implied consent law covers snowmobiles driven anywhere in the state as is the case with motor vehicles.

### DECISION

Affirmed.