**STATE of Minnesota, Respondent,**

v.

**Norvell Shapleigh STITH, Appellant.**

**No. 48726.**

Supreme Court of Minnesota.

April 11, 1980.

C. Paul Jones, Public Defender and Kathy King, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Thomas L. Johnson, County Atty., Vernon E. Bergstrom, Chief, Appellate Division, David W. Larson, Asst. County Atty., Thomas A. Weist and Janeen E. Rosas, Asst. County Attys., Minneapolis, for respondent.

Heard before KELLY, YETKA and SCOTT, JJ., and considered and decided by the court en banc.

YETKA, Justice.

The appellant was convicted of two counts of theft by swindle, Minn.Stat. §§ 609.52, subd. 2(4), 3(1), 609.05 (1978), two counts of theft by representation, Minn. Stat. §§ 609.52, subd. 2(3), 3(1), 609.05 (1978), and seven counts of securities fraud, Minn.Stat. §§ 80A.01, 80A.22, 609.05 (1978). The trial court imposed two consecutive 0–10 year prison terms and fines of $20,000 for the two counts of theft by swindle. Stith appeals from both the judgments of conviction and the sentences imposed. We affirm the convictions for theft by swindle and securities fraud but vacate the two convictions for theft by false representations.

This case was tried simultaneously with the case of State v. Eaton, 292 N.W.2d 260 (Minn.1980). The two cases were heard at oral argument on the same day and the two opinions are being issued simultaneously. The facts are fully outlined in the Eaton decision and will not be repeated here. The issues raised in this appeal are:

1. Was it prejudicial error to order a joint trial where the co-defendants were represented by the same attorney and appellant's right of confrontation may have been impaired?

2. Was appellant erroneously convicted of 11 counts and sentenced on 2 counts in violation of Minn.Stat. §§ 609.04 and 609.-035 (1978)?

3. Was appellant Stith improperly convicted under the theft statutes because his conduct was more specifically covered by the securities fraud statutes and were the securities fraud convictions multiplicious?

4. Was appellant improperly convicted under the securities fraud statutes because the definition of "security" in Minn.Stat. § 80A.14(q) (1978) is too vague to notify appellant he was dealing with securities?

5. Did the state fail to prove the essential elements of securities fraud?

■ 1. As discussed in the Eaton case, the joinder here was not made solely for economy of time or expense, but also to assure witness appearances and minimize jury confusion. State v. Strimling, 265 N.W.2d 423 (Minn.1978). While joint representation is not advisable where defendants are tried together, Stith was fully advised of his right to separate counsel, and he chose to waive that right. State v. Olsen, 258 N.W.2d 898 (Minn.1977).

Stith contends, however, that the state's motion for joint trial 12 days before the scheduled trial date placed defense counsel in an ethical dilemma from which he could not extricate himself.[1] It seems incredible to believe that defense counsel knew how to move for a continuance due to his own schedule conflict but yet could not request a continuance to allow separate counsel to prepare. A continuance so clearly in the interests of justice would undoubtedly have

1. Stith is represented on appeal by separate counsel from the public defender's office.

been granted. *In re T.D.F.*, 258 N.W.2d 774 (Minn.1977).

Stith claims that he was denied his right of confrontation when, as part of defendants' case, a taped statement by Eaton was played to the jury, but Eaton did not take the stand. The Minnesota and federal constitutions both give a defendant in a criminal prosecution the right "to be confronted with the witnesses against him." Minn.Const. art. I, § 6; U.S. Const. amends VI, XIV. Thus, it has been held that the admission against a defendant of a co-defendant's confession which implicates the defendant, where the co-defendant does not take the stand, violates the defendant's right to confrontation. *State v. Gruber*, 264 N.W.2d 812 (Minn.1978); *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

In this case, the defendants themselves submitted the statement to which Stith now objects. Eaton was not a witness against Stith, but rather one in his favor. Eaton's statement was not a confession; it was a protestation of both his and Stith's innocence. Eaton claimed that he was an intermediary in the transactions between Bemel and Stith, a position wholly consistent with Stith's claim that the $42,500 was Bemel's personal investment. There was consequently nothing for Stith to cross-examine Eaton about, and the statement did not prejudice Stith in any way.

Further, as Stith concedes, another reason he did not cross-examine Eaton was because both defendants were represented by the same attorney. The taped statement was submitted by defense counsel who, of course, could not object to his own offer of evidence. The next step in Stith's argument is to blame the joint representation on the delayed motion for joinder. This argument has no merit in light of the fact that Stith waived his right to independent counsel, even if he was tried separately, in the proceeding conducted by the trial court pursuant to *State v. Olsen*, 258 N.W.2d 898 (Minn.1977).

It is apparent that Stith and Eaton elected to be jointly represented, made no effort to obtain separate counsel when joint trial was ordered, and offered into evidence the statement to which Stith now objects. The errors alleged were caused by deliberate actions by Stith and Eaton which resulted in no prejudice to them.

2. Like Eaton, Stith also claims that he was improperly sentenced on two counts of theft by swindle under Minn.Stat. § 609.035 (1978). However, these thefts of two separate checks at two different times are separate behavioral incidents even though they were motivated by a single goal to swindle as much as possible. *State v. Gilbert*, 262 N.W.2d 334 (Minn.1977); *State v. Gamelgard*, 287 Minn. 74, 177 N.W.2d 404 (1970).

Stith further contends that the convictions for theft by false representation and for securities fraud must be vacated pursuant to Minn.Stat. § 609.04 (1978):

Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included offense, but not both. An included offense may be any of the following:

(1) A lesser degree of the same crime; or

\* \* \* \* \* \*

(4) a crime necessarily proved if the crime charged were proved \* \* \*.

Stith argues that, since the swindle was accomplished by means of numerous false representations, theft by false representation was necessarily proved by proof of theft by swindle. The state agrees with Stith and has conceded in its brief that theft by swindle and theft by false representation merely describe the same theft in this case. Therefore, the two convictions for theft by false representation are vacated. *See State v. Koonsman*, 281 N.W.2d 487 (Minn.1979).

With respect to the convictions for securities fraud, however, it is apparent that theft by swindle requires proof of facts which securities fraud does not and vice versa. Theft requires that property actual-

ly be received, but securities fraud does not. Securities fraud requires the offer or sale of a security, but theft does not. Therefore, section 609.04 does not bar convictions for both securities fraud and theft by swindle. *State v. Hesse*, 281 N.W.2d 491 (Minn.1979) (incest requires proof of facts which criminal sexual conduct in the first degree does not and vice versa); *State v. Idowu*, 272 N.W.2d 354 (Minn.1978) (aggravated forgery-uttering requires proof of facts other than those required for theft by check and vice versa).

■ 3. There is no merit to Stith's contention that he could only be charged with securities fraud under the rule of *State v. Kalvig*, 296 Minn. 395, 209 N.W.2d 678 (1973). *Kalvig* was based on an inferred legislative intent, but here we need not infer intent; the securities fraud provisions specifically state that sections 80A.01 to 80A.31 do not limit the power of the state to punish any person for any conduct which constitutes a crime under any other statute. Minn.Stat. § 80A.22, subd. 3 (1978).

■ Stith goes on to argue, however, that the seven counts of securities fraud are multiplicious. Although the brief actually speaks of *duplicity*, the proper term is *multiplicity*. Duplicity is the joining in a single count of two or more distinct and separate offenses, whereas multiplicity is the charging of a single offense in several counts. 1 C. Wright, *Federal Practice and Procedure* § 142 (1969). Stith's argument is that all seven counts of securities fraud constituted one scheme to defraud and should therefore have been only one count.

Stith was alleged to have made the following material misstatements of fact:

1. That Alan Eaton had a financial connection with the Eaton family who founded Eaton Laboratories;

2. That European American Financial S.A. has some type of financial connection with the Banco de Colombia in Panama;

3. That Allen C. Thompson of Memphis, Tennessee, was an agent courier of Alan Eaton who would handle the transfer of $30,000 provided by Grain Towers, Inc., into a Panamanian bank account maintained on behalf of Grain Towers, Inc.;

4. That in January of 1976 appellant Stith appeared before the Board of Directors of Banco de Colombia in Panama and had secured a funding commitment from that bank for the Grain Towers project in Minneapolis;

5. That Norvell Shapleigh Stith had been advisor to the Eaton family of Eaton Laboratories for approximately 18 years;

6. That the monies provided by Messrs. Bemel and Brantingham to defendant Eaton on February 9, 1976; namely, the $30,000 would be used to purchase a certificate of deposit in the name of Grain Towers, Inc., at the Banco de Colombia in Panama and that Mr. Bemel and Mr. Brantingham could obtain that sum of $30,000 from the Banco de Colombia upon very short notice; namely, approximately 22 days' notice; and

7. That Alan Eaton was the owner of the home at 6609 Biscayne Boulevard, Edina, Minnesota, and that he owned that home "free and clear."

The state claims that each of these false statements constitutes a separate offense under Minn.Stat. §§ 80A.01(b) and 80A.22 (1978):

80A.01 *Sales and Purchases.* It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly:

(a) to employ any device, scheme, or artifice to defraud;

(b) *to make any untrue statement of a material fact* or to omit to state material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or

(c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

80A.22 *Criminal Penalty.* Subdivision 1. Any person who wilfully violates *any provision of sections 80A.01 to 80A.31 except section 80A.17*, or any rule or order under sections 80A.01 to 80A.31, of which

he has notice, or who violates section 80A.17 knowing that the statement was false or misleading in any material respect, may be fined not more than $5,000 or imprisoned not more than five years or both. *Each of the acts specified shall constitute a separate offense and a prosecution or conviction for any one of such offenses shall not bar prosecution or conviction for any other offense.*

(Emphasis added.) Stith argues that he could have been charged under section 80A.01(a) or (c), either of which would have resulted in one count. He claims that he employed only one scheme to defraud, or one course of business which would operate as a fraud. Stith truthfully points out that all seven misrepresentations were made pursuant to one large plan to swindle Bemel and Brantingham.

██ However, a literal reading of these two statutes indicates that the making of each untrue statement of a material fact in connection with the offer, sale or purchase of any security is a separate offense. Sections 80A.01(a), (b), and (c) are phrased in the disjunctive, indicating that a violation of any clause constitutes an offense. Section 80A.22 is further evidence that the legislature intended this interpretation. In this case, the prosecution chose to charge under section 80A.01(b).

Stith relies on several federal cases which strike counts of securities fraud on grounds of multiplicity. The federal securities fraud statute reads as follows:

(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any transaction, practice, or course of business, which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C.A. § 77q (West 1971). It is obvious that the operative language of clause (a)(2) above differs from that of section 80A.01(b). Since the federal offense is to *obtain* money or property, each untrue statement of material fact would not be a separate offense under the federal statute.

The difference in language between the federal and Minnesota statutes accounts for the fact that the federal cases cited by Stith do not deal with the issue of whether each false statement may be a separate offense. Instead, the federal cases focus on whether each mailing of an offer containing false statements may be a separate offense or whether each sale of a security may be a separate offense. As to the former issue, *United States v. Hughes*, 195 F.Supp. 795 (S.D.N.Y.1961), holds that separate mailings of offers containing false statements of material fact do not constitute separate offenses. In a more recent case, however, the First Circuit held that:

We agree with every other circuit that has faced the question that the appropriate units of prosecution under § 77q(a) are separate transactions accompanied by use of the mails. (Citing cases from the Second, Fifth, and Seventh Circuits.)

*United States v. Waldman*, 579 F.2d 649, 654 (1st Cir. 1978). With respect to the latter issue, *United States v. Birrell*, 266 F.Supp. 539 (S.D.N.Y.1967) holds that if the prosecution could prove only one scheme to defraud with numerous victims, only one offense would have been committed. However, the Eighth Circuit recently stated that *Birrell* provides only one view of the allowable unit of prosecution and that each sale of a security may be a separate offense. *United States v. Naftalin*, 606 F.2d 809 (8th Cir. 1979). The more recent federal cases therefore seem to take an expansive, rather than a restrictive, view of the federal securities fraud statute.

██ It is not inconsistent with judicial interpretations of the federal statute, there-

fore, to interpret section 80A.01(b) literally to make each material misstatement a separate offense. We recognize, however, that the plain meaning of section 80A.01(b) may cause certain difficulties. It may be difficult to distinguish one false statement of material fact from another. Simply listing each lie a defendant made and making each a separate offense could exaggerate the criminality of his or her conduct. However, any harsh results of the statute could be modified by the charging authorities, the trial judge through section 609.035 or general sentencing discretion, or the corrections authorities. *See State v. McEwan*, 265 N.W.2d 818 (Minn.1978).

In this case, Stith was not sentenced at all for securities fraud. The trial court properly sentenced Stith only on the two counts of theft by swindle pursuant to Minn.Stat. § 609.035 (1978). The number of convictions is relevant, however, to an inmate's eligibility for parole. Stith argues that the parole authorities considered the 11 separate convictions in making up his parole matrix, resulting in an inordinately long prison term before being eligible for parole.

Appellant's argument on this issue has much merit. Suppose there had been, instead of seven separate misrepresentations, 25 separate false statements to extract the same amount of money as here; namely, $42,500 in total, from the victims. Is the crime any more or less severe because more statements were made rather than less? However, we cannot deal with the question of the parole matrix in this appeal because the Department of Corrections is not a party to this action. The proper way to raise the question of the matrix as applied to Stith and Eaton is by separate state habeas corpus proceedings in the manner provided by our decision in *Kelsey v. State*, 283 N.W.2d 892 (Minn.1979). *See also, State ex rel. Taylor v. Schoen*, 273 N.W.2d 612 (Minn.1978).

4. Stith contends that the definition of "security" in Minn.Stat. § 80A.14(q) (1978) is too vague to notify him he was dealing with securities. It is alleged that Stith offered and sold several types of securities. Upon receipt of the $12,500, Stith forwarded a *receipt for five shares of bearer stock* and an *investment management agreement* to Eaton, who gave the documents to Bemel. Bemel signed the investment management agreement, as well as a post-mortem power of attorney, in the belief that Stith would be legally entitled to manage the funds. No similar documents were executed in conjunction with the $30,000, but both amounts were to be deposited in *certificates of deposit* in the Banco de Colombia at Panama. The $30,000 was allegedly deposited in short-term certificates which allowed access to the money within 22 days, whereas the $12,500 was allegedly deposited in longer-term certificates. When faced with demands from Bemel and Brantingham for the return of the money, however, Stith and Eaton claimed that both amounts were placed in 1-year certificates. No rate of interest was ever specified for any of these certificates.

The term "security" is defined as follows:

(q) "Security" means any note; stock; treasury stock; bond; debenture; evidence of indebtedness; certificate of interest or participation in any profit sharing agreement; collateral trust certificate; preorganization certificate or subscription; transferable shares; investment contract; investment metal contract or investment gem contract; voting trust certificate; certificate of deposit for a security; certificate of interest or participation in an oil, gas or mining right, title or lease or in payments out of production under such a right, title or lease; or, in general, any interest or instrument commonly known as a security, or any certificate of interest or participation in, temporary or interim certificate for, receipt for guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing. "Security" does not include any insurance or endowment policy or annuity contract under which an insurance company promises to pay money either in a lump sum or periodically for life or for some other specified period.

Minn.Stat. § 80A.14(q) (1978).

It is clear from the definition that stock, receipts for stock, and investment contracts

are securities. Stith argues, however, that these documents merely represent bogus transactions. This argument loses sight of the fact that securities fraud statutes are specifically designed to prevent and punish such sham transactions. In addition, Stith testified that he devised the investment management agreement and stock receipts so investors could claim that a return of the money with interest was sale of stock generating capital gains rather than ordinary income. Given this testimony, Stith should not be heard to argue now that he did not know these documents were securities.

It is less clear from the face of the definition that certificates of deposit are securities. The state has conceded that a "certificate of deposit for a security" is an exotic security in the nature of a stock-pooling agreement, with which Stith did not deal. However, certificates of deposit are certainly "evidence of indebtedness." In this case, the certificates carried an unspecified interest rate and were to make up a collateral trust account in the Banco de Colombia at Panama; these certainly sound like deposits involving some risk of capital. Under federal law, capital notes, certificates of investment, and passbook savings accounts have been held to be securities. *SEC v. First American Bank & Trust Co.*, 481 F.2d 673 (8th Cir. 1973). Minnesota law has consistently held that the securities statutes must be construed broadly to protect potential investors. *State v. Investor's Security Corp.*, 297 Minn. 1, 209 N.W.2d 405 (1973). Therefore, we hold that section 80A.14(q) is stated clearly enough to inform Stith that he was dealing with securities.

5. There is simply no merit to Stith's contentions that the state did not prove securities fraud. The certificates of deposit, receipt for stock, and investment management agreement are securities within the meaning of Minn.Stat. § 80A.14(q) (1978). The jury found that the seven misrepresentations were all material to a reasonable investor, and materiality is a question for the trier of fact. *Strouth v. Wilkison*, 302 Minn. 297, 224 N.W.2d 511 (1974). Although Stith did not specifically make

the misrepresentation that Allen C. Thompson, Jr., was an international courier, the state charged and proved that Stith and Eaton were co-conspirators. Finally, there was no prejudicial conduct by the prosecutor during the trial.

The convictions and sentences for theft by swindle and securities fraud are affirmed, but the two convictions of theft by false representation are vacated.