STATE of Minnesota, Appellant,

v.

Joseph Roscoe WILLIAMS, Respondent.

No. C2–86–1082.

Court of Appeals of Minnesota.

Dec. 2, 1986.

Hubert H. Humphrey, III, Minnesota Atty. Gen., Paul R. Kempainen, Spec. Asst. Atty. Gen., St. Paul, Bruce F. Gross, Cottonwood Co. Atty., Windom, for appellant.

John D. Scholl, Bernardy, Scholl & Hanson, Worthington, for respondent.

Considered and decided by FOLEY, P.J., and SEDGWICK, and FORSBERG, JJ., with oral argument waived.

## OPINION

FOLEY, Judge.

The State of Minnesota appeals from a pretrial order dismissing a forgery charge against respondent John Roscoe Williams in violation of Minn.Stat. § 609.63, subd. 1(6) (1984). Dismissal of the charge was predicated on *State v. Kalvig*, 296 Minn. 395, 209 N.W.2d 678 (1973). The State contends that the trial court's construction of *Kalvig* was erroneous as a matter of law and that it had the authority to prosecute the forgery charge. Appeal is taken pursuant to Minn.R.Crim.P. 28.04, subd. 1(1). We reverse and remand for trial.

## FACTS

The facts alleged in the complaint are as follows. Williams is the president and sole shareholder of Williams Implement, Inc. In late September 1985, he was approached by Richard Imhoff, who wanted to file for unemployment compensation benefits and claim that he had worked for Williams during the month of September 1985, although he had actually been fishing in Canada. Williams agreed to back up Imhoff's claim.

Imhoff filed his claim for unemployment benefits on September 30, 1985, listing Williams Implement as one of two employers during the previous 52 weeks. The Department of Economic Security (DES) mailed a Request for Wage and Separation Information to Williams Implement. Upon receiving this form, the bookkeeper for Williams Implement placed it on Williams' desk. When the bookkeeper called it to Williams' attention several days later, he said he would "take care of it."

Williams filled in the form, signed it and filed it with the DES on or about October 10, 1985. Williams reported that Imhoff had been employed for four credit weeks from September 3 through 28, 1985 and had been paid a total of $250 in wages. Based on this information, however, Imhoff would not have qualified for benefits because he was required to earn at least $99 per week during the month of September.

Mary Ellen Morrell, a DES claims clerk, then contacted Williams by phone to check on the accuracy of the form. Williams informed Morrell that he had meant to report $250 *per week* and that Imhoff had received $1,000 in total gross wages. Based on Williams' written and verbal representations, Imhoff received benefits totaling $1,638.

During a subsequent investigation, the DES discovered that Imhoff had not been employed by Williams Implement during September 1985 and that he had not been paid by Williams for that period. A complaint was issued charging Williams with felony forgery under Minn.Stat. § 609.63, subd. 1(6) and with gross misdemeanor false representation under a section of the Minnesota Economic Security Law, Minn. Stat. § 268.18, subd. 3 (1984).

Two issues were raised at the omnibus hearing: whether probable cause existed to support the charges and Williams' participation in the alleged crimes and whether under *Kalvig* prosecution of unemployment fraud was limited to false representation, a gross misdemeanor under Minn.Stat. § 268.18, subd. 3. Following submission of letter briefs on this latter issue, the trial court entered an order finding probable cause to support the false representation charge but dismissing the forgery charge:

> The Court finds pursuant to authority set forth in *State v. Kalvig*, 296 MINN. 395, 209 NW 2d 678 (1973) that Minnesota Statute 268.18 is the only Statute under which defendant can be charged because it is a specific Statute aimed directly at the alleged conduct and the legislature has thus manifested its intention that unemployment fraud be prosecuted under chapter 268 and that the normal discretion of the prosecution to charge under other statutes is not applicable in this case. The Court therefore dismisses the charge of forgery in violation of Minnesota Statute 609.63 Subd. 1(6).

This appeal followed.

## ISSUES

1. Is the pretrial order appealable?

2. Did the trial court err as a matter of law in dismissing the felony forgery charge?

## ANALYSIS

1. Under Minn.R.Crim.P. 28.04, subd. 1(1), a prosecuting attorney may appeal as of right "from any pretrial order of the trial court except an order dismissing a complaint for lack of probable cause to believe the defendant has committed an offense * * *."

■ In the present case, the forgery count was *not* dismissed for lack of probable cause but dismissal was premised solely on the trial court's interpretation of *Kalvig*. Since the issue presented is solely a question of law, the pretrial order is appealable as of right.

■ 2. Resolution of this appeal hinges on this court's independent interpretation of the *Kalvig* decision. *See State v. Linder*, 268 N.W.2d 734, 735 (Minn.1978). (In reviewing questions of law, we need accord no special deference to the trial court's ruling.) For the following reasons, we hold that *Kalvig* is not applicable to this case

because the statutes at issue are not irreconcilably in conflict. We further conclude that prosecution of this case may proceed on both theories advanced in the criminal complaint because, absent legislative intent to the contrary and absent discrimination against a particular class of defendants, a prosecutor may charge under any and all statutes applicable to the defendant's acts, regardless of penalty. *See United States v. Batchelder*, 442 U.S. 114, 123–24, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979); *State v. Love*, 350 N.W.2d 359, 362 (Minn.1984).

In *Kalvig*, a per curiam decision with one special concurrence and two dissents, the defendant was charged with the felony of false representation under Minn.Stat. § 609.52, subd. 2(3) (1971) (the general theft statute) and with the misdemeanor of welfare fraud under Minn.Stat. § 256.83 (1969). In relevant part, these statutes provided:

*General Theft Statute*

Subd. 2. \* \* \* Whoever does any of the following commits theft and may be sentenced as provided in subdivision 3:

\*     \*     \*     \*     \*     \*

(3) Obtains for himself or another the possession, custody or title to property of a third person by intentionally deceiving him with a false representation which is known to be false, made with intent to defraud, and which does defraud the person to whom it is made.

Minn.Stat. § 609.52 (1971).

*Welfare Fraud Statute*

Whoever obtains, or attempts to obtain, or aids or abets any person to obtain by means of a wilfully false statement or representation, or by impersonation, or other fraudulent device;

(1) Assistance to which he is not entitled;

(2) Assistance greater than that to which he is justly entitled; is guilty of a misdemeanor; and, upon the conviction thereof, shall be fined not more than

$100 or imprisoned for not more than three months.

Minn.Stat. § 256.83 (1969).

Of particular import to this case is the *Kalvig* court's initial determination that because the welfare fraud statute and the general theft statute prohibited the same conduct, they were irreconcilably in conflict. To resolve this conflict, the supreme court relied on Minn.Stat. § 645.26, subd. 1, which provided:

When a general provision in a law is in conflict with a special provision in the same or another law, the two shall be construed, if possible, so that effect may be given to both. *If the conflict between the two provisions be irreconcilable, the special provision shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted at a later session and it shall be the manifest intention of the legislature that such general provision shall prevail.*

*Id.* (emphasis supplied).[1]

Although it was evident that the welfare fraud statute was subsequently enacted, the *Kalvig* court concluded that its provisions would prevail even if the general theft statute had been "enacted at a later session" because the legislature had not manifested any intent that the general provision would prevail. *Kalvig*, 296 Minn. at 398, 209 N.W.2d at 680. The court reasoned that the absence of express language denoted a contrary legislative intent, particularly in light of the recognized policy underlying welfare fraud legislation to treat alleged violations more leniently and to allow a mother on AFDC to maintain the family unit without the stigma of a felony conviction. *Id.* at 398–99, 209 N.W.2d at 680–81.

In this case, the State contends that the *Kalvig* court was simply recognizing the obvious—the general theft statute and the welfare fraud statute had identical elements but differing penalties. We agree. The statutory elements involved in *Kalvig* are summarized as follows:

---

1. Minn.Stat. § 645.26, subd. 1 (1984) is identical     to the above-quoted language.

*General Fraud Statute (Felony)*
1. Obtaining property of another;
2. A false representation; and
3. Intentional behavior.

*Welfare Fraud Statute (Misdemeanor)*
1. Obtaining welfare assistance;
2. A false representation; and
3. Willful behavior.

Plainly, the irreconcilable conflict between the statutes in *Kalvig* was the mechanism triggering application of Minn.Stat. § 645.-26, subd. 1.

If *Kalvig* is to have any precedential impact, the statutes at issue here must also conflict and be incapable of reconciliation. In relevant part, the statutes under which Williams was charged provide:

*False Misrepresentation (Unemployment Fraud)*

> Subd. 3. **False representations; concealment of facts; penalty.** Whoever makes a false statement or representation knowing it to be false or knowingly fails to disclose a material fact to obtain or increase any benefit or other payment under sections 268.03 to 268.24, or under the employment security law of any state or of the federal government or of a foreign government, either for himself or any other person, shall be guilty of a gross misdemeanor.

Minn.Stat. § 268.18 (1984).

*Forgery (General Theft)*

> Subdivision 1. Whoever, with intent to injure or defraud, does any of the following is guilty of forgery and may be sentenced to imprisonment for not more than three years or to payment of a fine of not more than $5,000, or both:
>
> \* \* \* \* \* \*
>
> (6) Without authority of law, destroys, mutilates, or by alteration, false entry, or omission, falsifies any record, account, or other document relating to a person, corporation, or business, or filed in the office of, or deposited with, any public office or officer; \* \* \*.

Minn.Stat. § 609.63 (1984). The essential elements of these crimes are:

*False Representation*
1. A false statement or representation (or failure to disclose a material fact);
2. Knowledge that it was false; and
3. A purpose of obtaining or increasing benefits for oneself or another.

*Forgery*
1. Falsification of a document;
2. The document must relate to a person, corporation or business, or be filed in a public office; and
3. Intent to injure or defraud.

As the State notes, one major difference in these statutes is readily apparent—forgery requires a writing while false representation may be *either* oral or documentary. Thus, acts prohibited under the false representation statute may not give rise to prosecution under the forgery statute. One who knowingly makes a false oral representation to the DES or knowingly fails to orally disclose a material fact, may be charged with false representation under Minn.Stat. § 268.18, subd. 3 but not with forgery under Minn.Stat. § 609.63, subd. 1(6). This distinction is especially significant since Williams is charged with making a false *oral* representation to DES clerk Morrell.

Another dissimilarity between the statutes is apparent. Minn.Stat. § 268.18, subd. 3 covers both actual false representations and knowing failures to disclose material facts, making mere inaction with the requisite knowledge chargeable as a gross misdemeanor. Minn.Stat. § 609.63, subd. 1(6), however, requires *actual* destruction, mutilation or falsification of a document. Thus, even if the falsification stemmed from omission of facts on a document, affirmative action of some sort in filling out the form is required to provide a basis for prosecution under the forgery statute. These distinctions reveal that the statutes at issue here may not, in fact, be truly irreconcilable.

In *State v. Eaton*, 292 N.W.2d 260 (Minn. 1980), and in *State v. Stith*, 292 N.W.2d 269 (Minn.1980), the defendants were both convicted of theft by swindle and securities

fraud. Relying on *Kalvig*, both defendants asserted that they could only be charged under the more specific securities fraud statute and not under the general theft statute. The *Eaton* court rejected this argument and noted that while "inferred" legislative intent was dispositive in *Kalvig*, the securities fraud statute, Minn.Stat. § 80A.22, subd. 3 (1978), manifests a clear legislative intent to·allow prosecution for theft by swindle *in addition to* prosecution for securities fraud. *Eaton*, 292 N.W.2d at 268. *Stith*, a decision released the same day as *Eaton*, adhered to this distinction:

> *Kalvig* was based on an inferred legislative intent, but here we need not infer intent; the securities fraud provisions specifically state that sections 80A.01 to 80A.31 do not limit the power of the state to punish any person for any conduct which constitutes a crime under any other statute. Minn.Stat. § 80A.22, subd. 3 (1978).

*Stith*, 292 N.W.2d at 273.

Of particular relevance to the present case is the *Eaton* court's reference to a footnote contained in *Kalvig* which stated in pertinent part:

> Our decision here does not have any substantial precedential value *with respect to welfare fraud* because the current statute making such activity a misdemeanor, Minn.St. 1971, § 256.98, has been amended by L. 1973, c. 348, so as to make such activity a crime chargeable under our general theft statute, Minn.St. 609.52.

*Kalvig*, 296 Minn. at 396 n. 1, 209 N.W.2d at 679 n. 1 (emphasis supplied). Commenting on this footnote, the *Eaton* court stated:

> [T]he [*Kalvig*] court noted that [its decision] had *little precedential value* since the 1971 statute making welfare fraud a misdemeanor had been amended in 1973 to make the activity a crime chargeable under the general theft statute, Minn. Stat. § 609.52.

*Eaton*, 292 N.W.2d at 268 (emphasis supplied).

We think it noteworthy that the *Eaton* court chose a broad construction of the *Kalvig* footnote, despite that footnote's limiting language *"with respect to welfare fraud."* Had the *Eaton* court intended to limit *Kalvig's* precedential value only in cases involving welfare fraud, it seemingly would have done so. Since it did not, we can only conclude that *Kalvig* is to be confined to its facts. Additional support for this conclusion is found in *State v. Walker*, 319 N.W.2d 414 (Minn.1982), and *State v. Chryst*, 320 N.W.2d 721 (Minn. 1982).

In *Walker*, the defendant claimed that under *Kalvig* the prosecutor did not have authority to charge him with theft since the legislature had enacted a more specific cattle rustling provision and therefore had intended that all activity constituting cattle rustling be dealt with under the more specific statute. The supreme court did not address the applicability of *Kalvig*, "for if defendant had been prosecuted for cattle rustling he would have been subject to the same punishment [as under the theft statute]." *Walker*, 319 N.W.2d at 416–417.

In *Chryst*, *Kalvig* was again distinguished. There, the supreme court was presented with the certified question of whether the prosecutor had authority to charge the defendants under the felony theft statute even though a more specific odometer tampering statute existed which treated the misconduct as a gross misdemeanor. It held that the district court properly concluded that prosecution for felony theft was not barred and remanded the matter for trial:

> In *Kalvig* we affirmed the dismissal of felony theft charges against a defendant who allegedly fraudulently received welfare payments, holding that the legislature's enactment of a specific law making welfare fraud of the type alleged a misdemeanor indicated a legislative intent that all welfare fraud of that type be prosecuted as a misdemeanor rather than under the felony theft statute. *We based the determination of legislative intent on the fact that the two statutes*

cover the same conduct. *Since the conflict between the two statutes was irreconcilable and since the rule in such a situation is that the more specific statute governs, we concluded that the prosecution pursuant to the theft statute was barred.* We also pointed to a statement of legislative policy set forth in the welfare fraud statute at that time which supported our interpretation.

\* \* \* \* \* \*

The odometer tampering statute contains a provision that prohibits selling or offering to sell a car knowing that the odometer has been altered without disclosing that fact to the prospective purchaser. *However, not all people who commit acts falling within this prohibition also violate the theft statute.* One can sell a car knowing that it has been altered without disclosing that fact and yet not commit the crime of theft by trick or swindle, *because the odometer tampering offense does not require intent to defraud or the obtaining of property that one would not have obtained but for the failure to disclose.* Similarly, one can violate the odometer tampering statute by offering to sell a car knowing that its odometer has been altered without disclosing that fact, whereas the theft statute could be violated in this context only by a completed sale.

*Chryst,* 320 N.W.2d at 722 (emphasis supplied).

Thus, the absence of an irreconcilable conflict between the felony theft statute and the odometer tampering statute was dispositive in *Chryst.* Stated another way, since the statutes did not cover the same conduct, "there is no reason to believe that the legislature intended to limit the prosecutor's discretion to prosecute the alleged conduct under the theft statute \* \* \*." *Id.* at 723. In *Chryst,* however, the defendants were charged *solely* under the felony theft statute. Here, by contrast, Williams was charged with violations of *both* the felony theft statute and the gross misdemeanor false representation statute.

A subsequent case sheds light on the question of whether a prosecutor may proceed under both theories. In *State v. Love,* 350 N.W.2d 359 (Minn.1984), the defendant was convicted of criminal sexual conduct and intrafamilial sexual abuse. On appeal, he argued that under *Kalvig,* the denial of his pretrial motion to dismiss the criminal sexual conduct charges was reversible error because, in enacting intrafamilial sexual abuse statutes, the legislature intended that all such conduct be prosecuted under those statutes. The supreme court disagreed, quoting at length from *Chryst. Love,* 350 N.W.2d at 361–62.

The *Love* court also examined the differences inherent in the sentencing structure of the two statutes and noted:

[T]he fact that there are reasons for a defendant wanting to be prosecuted for intrafamilial sexual abuse rather than criminal sexual conduct does not mean that a prosecutor is obligated to prosecute him that way.

*Id.* at 361. Moreover, the court indicated that the sentencing advantages of a conviction for intrafamilial sexual conduct implied an intent by the legislature *not* to limit prosecutorial discretion:

[I]t appears that the legislature wanted to give the prosecutor discretion to prosecute under the intrafamilial sexual conduct statute in certain cases where more lenient treatment of the defendant would be in the best interest of the complainant or the family unit. Our recent decision in *State v. Haase,* 341 N.W.2d 879 (Minn. 1984), which held that adjudicating a defendant guilty of both criminal sexual conduct and intrafamilial sexual abuse for the same conduct did not violate Minn.Stat. § 609.04 (1982), *is consistent with the view that the prosecutor, in an appropriate context, is free to prosecute under either or both of the statutes.*

*Id.* at 362 (emphasis supplied).

Williams contends that the present case is distinguishable from *Eaton* and *Stith* because the Minnesota Economic Security Law does not contain an express provision

allowing prosecution under "any other statute" as did the securities fraud statute. He asserts that the absence of a similar provision infers a legislative intent that prosecution of all unemployment violations be limited to chapter 268. In support of this inference, he points to the 1977 amendment to Minn.Stat. § 268.18, subd. 3, which increased the penalty from a misdemeanor to a gross misdemeanor. *See* 1977 Minn. Laws ch. 4, § 10. Williams asserts that if the legislature had intended to allow prosecution of unemployment compensation violations under the general theft statute, it would have amended the statute to expressly do so as the legislature did with welfare fraud in *Kalvig.*

We are not persuaded by this argument. As demonstrated in the preceding analysis, *Kalvig* is not applicable because the statutes at issue here do not seek to punish the "same conduct" and because the legislature has not *clearly* and *unambiguously* stated its intent to limit prosecution in some manner.

### DECISION

The trial court erred in dismissing the forgery count against Williams in violation of Minn.Stat. § 609.63, subd. 1(6) (1984). We reverse and remand for trial on both the forgery and false representation counts.

Williams is awarded attorney's fees of $250 pursuant to his motion under Minn.R. Crim.P. 28.04, subd. 2(6).

Reversed and remanded for trial.