STATE of Minnesota, Respondent,

v.

Michael Sean O'BRIEN, Appellant.

No. C6–88–1025.

Court of Appeals of Minnesota.

Sept. 27, 1988.

Review Denied Nov. 16, 1988.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, James C. Backstrom, Dakota Co. Atty., James M. Crow, Asst. Co. Atty., Hastings, for respondent.

C. Paul Jones, State Public ·Defender, Marie L. Wolf, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by HUSPENI, P.J., and SHORT and IRVINE *, JJ., without oral argument.

## OPINION

HUSPENI, Judge.

In Dakota County District Court, Michael Sean O'Brien was charged with, and pleaded guilty to, a total of six counts of theft by swindle in violation of Minn.Stat. § 609.52, subds. 2(4) and 3(1) (1986). O'Brien was convicted and sentenced to concurrent terms of 18 months, 21 months, 25 months, 32 months, 41 months and 81 months. O'Brien appeals his sentence. We affirm.

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

## FACTS

In November 1986, O'Brien proposed a business venture to Bruce Campbell whereby he would purchase used vehicles from a dealership in Missouri and re-sell them in the Twin Cities for a profit. Campbell's parents gave him $8,000 to invest in "Allied Leasing," which he in turn gave to O'Brien on December 3, 1986, in the form of a check. On December 12, 1986, Campbell wrote a second check for $3,000 to O'Brien to be used for the same business.

On December 16, 1986, Wilmet Campbell (Bruce's father) wrote a check for $40,000, and again on January 9, 1987, another for $40,000 to O'Brien. The total amount swindled from these two men was $91,000, and these four checks comprise four separate counts of theft by swindle in File No. C–7613.

O'Brien took one of the $40,000 checks to First Bank Minnesota in Burnsville, the bank the check was drawn on, and he received three $10,000 cashier's checks, a $5,000 cashier's check payable to himself and $5,000 in cash. O'Brien went to Las Vegas and cashed the three $10,000 checks, returned to Minnesota to that same bank and reported the three $10,000 checks stolen. The bank issued three more cashier's checks for $10,000 each, thus losing $30,000 to O'Brien. This incident was the basis for one count of theft by swindle in File No. C–7657.

At this same time O'Brien approached Steven Kruger with the same auto leasing scheme. Kruger wrote a $15,000 check to O'Brien. O'Brien gave Kruger four $10,000 checks drawn on the account of Kenneth Doernamen. All were returned for insufficient funds. On February 4, 1987, Kruger wrote O'Brien an additional check for $7,500 and O'Brien cashed it at a Las Vegas casino on February 9, 1987. Kruger also wrote two checks for $760 and $685 to cover supposed "title fees" and "driver fees." These actions form the basis of one count of theft by swindle, File No. C–7657.

At the sentencing hearing, O'Brien's motion to withdraw his guilty plea was denied. A clinical psychologist testified for the defense, recommending that O'Brien be placed on probation so that he could receive long-term treatment for his compulsive and pathological gambling.

The court used the *Hernandez* method of sentencing and imposed concurrent terms of 18 months, 21 months, 25 months, 32 months, 41 months and 82 months on the six counts. The 82–month sentence was a double departure of the final sentence imposed based on an offense severity level of 4 and a criminal history score of 7. O'Brien appeals the sentence.

## ISSUES

1. Was the sentence supported by substantial and compelling reasons justifying an upward durational departure?

2. Did the imposition of six separate felony counts, combined with the *Hernandez* method of sentencing, result in an unfair sentence?

## ANALYSIS

### I.

A trial court has broad discretion to depart from the presumptive sentence, and an appeals court will generally not interfere with an exercise of that discretion. *State v. Kindem*, 313 N.W.2d 6, 7 (Minn.1981). However, the trial court is obligated to review the facts of the case for possible mitigating circumstances and should depart downward when those circumstances are substantial and compelling. *See State v. Curtiss*, 353 N.W.2d 262, 264 (Minn.Ct. App.1984).

O'Brien claims that he is entitled to a downward dispositional departure because it would better serve society to allow him to be on probation so he could earn money to repay his victims. A clinical psychologist testified that O'Brien had a compulsive gambling disorder which could best be treated at Eden House, a community based program which is not a locked facility. However, he admitted that O'Brien had fled from authorities in the past and had never voluntarily enrolled in any treatment program for gambling disorders. Nothing in the psychologist's testimony es-

tablished a substantial and compelling reason to support a downward dispositional departure from the presumptive sentence.

■ Appellant also challenges the upward durational departure which was imposed by the trial court. Aggravating factors which may be considered in determining whether to depart durationally are:

(4) The offense was a major economic offense * * *. The presence of two or more of the circumstances listed below are aggravating factors with respect to the offense:

(a) the offense involved multiple victims or multiple incidents per victim;

(b) the offense involved an attempted or actual monetary loss substantially greater than the usual offense or substantially greater than the minimum loss specified in the statutes;

(c) the offense involved a high degree of sophistication or planning or occurred over a lengthy period of time; * * *.

Guidelines II.D.103.2.b.(4)(a)-(c).

O'Brien was convicted of six separate incidents of theft, which constitute a major economic offense. These offenses involved multiple victims who lost substantially more than the amount involved in a usual offense, a total of $136,000. The offenses occurred over a lengthy period of time—December 1986 to February 1987.

Additionally, O'Brien's swindle exhibited considerable sophistication and planning. He coordinated the cashing of his cashier's checks, his flight to Las Vegas, and his story of their theft, thereby inducing the bank to reissue $30,000 more in cashier's checks.

The last offense, the Kruger swindle, had sufficient aggravating factors of its own. Kruger wrote checks to O'Brien totaling $23,945. They were written for both large and small amounts from $15,000 to $685. O'Brien's request for these specific amounts created the illusion of a real deal because he asked for title and driver fees. Such careful planning shows that the offense was committed in a particularly seri-

ous way. *See State v. Litzinger*, 394 N.W.2d 803, 805–06 (Minn.1986).

We have already approved a double durational departure for a major economic offense involving theft of $30,000 by false representation. *Laughnan v. State*, 404 N.W.2d 326 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. June 9, 1987). This case involves theft by swindle and a similar rationale applies.

## II.

■ Using the *Hernandez* sentencing method, each of the six counts to which O'Brien pleaded guilty added a criminal history point for each sentence. *See State v. Hernandez*, 311 N.W.2d 478, 481 (Minn. 1981). O'Brien claims that the four counts in File No. C–7613, the swindle involving Bruce and Wilmet Campbell, should have been charged as only one count.

The *Hernandez* method of sentencing is permitted when multiple offenses have been committed against the same victim. *See State v. Moore*, 340 N.W.2d 671, 673 (Minn.1983). This court has ruled that the use of the *Hernandez* method of computing a criminal history score in conjunction with a durational departure does not necessarily constitute an unfair manipulation of the guidelines. *State v. Irwin*, 379 N.W.2d 110, 115 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Jan. 23, 1986).

O'Brien argues that the swindles described in these four counts constituted a single behavioral incident and were one course of conduct with one criminal purpose. Therefore, he continues, one sentence may have been justified for these swindles, but not four.

Minn.Stat. § 609.035 (1986) provides:

[I]f a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses and a conviction or acquittal of any one of them is a bar to prosecution for any other of them. All the offenses, if prosecuted, shall be included in one prosecution which shall be stated in separate counts.

The factors for consideration

in determining whether multiple violations constitute a single behavioral incident are unity of time, place and criminal objective.

*Bangert v. State,* 282 N.W.2d 540, 546 (Minn.1979). The test to be applied is not a mechanistic one, but in each case the court must examine the facts and exercise reasonable discretion. *City of Moorhead v. Miller,* 295 N.W.2d 548, 549–50 (Minn. 1980).

We agree with the trial court that each incident was a divisible offense and a separate sentence was justified for each. The fact that O'Brien used the same story repeatedly to obtain funds from several victims does not transform these incidents into one behavioral incident.

On December 3, 1986, O'Brien received the first check for $8,000 from Bruce Campbell, who obtained the funds from his parents. This constituted one count of theft by swindle. On December 12, 1986, nine days later, Bruce Campbell wrote O'Brien another check for $3,000.

The next check for $40,000 was written only four days later, December 16, 1986, by a different person, Wilmet Campbell. Wilmet wrote a second check for $40,000 on January 9, 1987, three weeks later.

We find support in case law for the trial court's decision to sentence on each count to which O'Brien pleaded guilty. In *State v. Chidester,* 380 N.W.2d 595 (Minn.Ct.App. 1986), *pet. for rev. denied* (Minn. March 21, 1986), Chidester was convicted of 12 counts of theft and two counts of aggravated forgery for separate checks he forged or misappropriated. He made the same argument as O'Brien makes here, claiming that his sentence was incorrect because his thefts were part of a single criminal objective—to obtain money to cover expenses. *Id.* at 598. The court rejected this argument because his criminal conduct spanned an eight month period and the objective was too broad to fit within the meaning of Minn.Stat. § 609.035 (1984).

Similarly, in *State v. Eaton,* 292 N.W.2d 260 (Minn.1980), the defendant argued that he had one large plan, which was to swindle as much as possible. Eaton planned and executed the thefts of two different checks at two separate times, only three days apart. The court held that Eaton's objective was too broad to be within the meaning of Minn.Stat. § 609.035 (1978). *Id.* at 267.

In *State v. Stith,* 292 N.W.2d 269, 272 (Minn.1980), separate sentences for convictions of theft by swindle from the same victim were upheld. Although motivated by a single goal, to swindle as much as possible, the thefts were still regarded as separate behavioral incidents.

■ Finally, O'Brien claims an internal inconsistency in this case because of the fact that the Campbell swindle gave rise to four counts while the Kruger swindle resulted in only one. We find no improper prosecutorial conduct. The prosecutor chose to charge the Kruger swindle as one count. We need not reach the question of whether that swindle could, in fact, have been charged as more than one count. Certainly, however, the decision to charge in one count should not provide a basis for O'Brien to argue the impropriety of charging the Campbell swindle in four.

Because O'Brien's conduct was not motivated by a single criminal objective, and was properly charged under Minn.Stat. § 609.035 (1986), the *Hernandez* method of sentencing was properly imposed and will stand.

## DECISION

AFFIRMED.

IRVINE, Acting Judge (dissenting).

I respectfully dissent.

I think that O'Brien has a point when he suggests that the transactions with the Campbells should be charged as one count instead of four, which when "Hernandized" resulted in a total of six counts with a double departure upward on the sixth count, totalling 82 months.

Aggravating factors which may be considered to determine whether to depart durationally are:

(4) The offense was a major economic offense;

(a) The offense involved multiple victims or multiple incidents per victim;

(b) The offense involved an attempted or actual monetary loss substantially greater than the usual offense or substantially greater than the minimum loss specified in the statute;

(c) The offense involved a high degree of sophistication or planning or occurred over a lengthy period of time.

Sentencing Guidelines II.D.103.2.b. When the Campbell, Kruger and bank offenses are considered together, there is no doubt that all of the above apply, but when the Campbell offenses are considered alone, the only one that applies is the large amount of money. In reality, there was only one victim, Willmet Campbell, who furnished all of the money, and the transactions took place over a relatively short period of time. I think they should have been charged in one count, as were the offenses in the charge involving Kruger. Under *Hernandez,* this would result in concurrent sentences of 18 months, 21 months and 25 months, and with a double durational departure at the end, a total of 50 months. This is still more than "a slap on the wrist," and would give O'Brien sufficient time to contemplate the error of his ways.