STATE of Minnesota, Respondent,

v.

Kenneth Wayne WOELFEL, Appellant.

No. C1–00–643.

Court of Appeals of Minnesota.

Jan. 2, 2001.

Review Denied March 27, 2001.

Mike Hatch, Attorney General, Alison Eckstein Colton, Assistant Attorney General, St. Paul, MN; and Michelle A. Dietrich, Redwood County Attorney, Redwood Falls, MN, for respondent.

Melissa V. Sheridan, Assistant State Public Defender, St. Paul, MN, for appellant.

Considered and decided by HARTEN, Presiding Judge, KLAPHAKE, Judge, and G. BARRY ANDERSON, Judge.

## OPINION

HARTEN, Judge

A jury convicted appellant Kenneth Wayne Woelfel on one count of bribery by a public officer or public employee in violation of Minn.Stat. § 609.42, subd. 1(2) (1996); three counts of theft in violation of Minn.Stat. § 609.52, subds. 2(1) and 3(2) (1996); and three counts of theft by false representation in violation of Minn.Stat. § 609.52, subd. 2(3) (1996). The district court vacated the jury verdict on the three counts of theft by false representation and sentenced appellant to four concurrent, executed prison terms for the bribery and theft convictions. The sentence is an upward durational and dispositional departure. Appellant challenges the sufficiency of the evidence supporting his bribery con-

viction, an evidentiary ruling, and the sentence. We affirm in part, affirm as modified in part, and reverse in part.

## FACTS

In March of 1997, appellant was fired from his job as a Redwood County child support officer, and on April 30, 1997, his paychecks and benefits were permanently discontinued. In June and July of 1997, appellant requested an affidavit from Richard Rohlik, a non-custodial parent whose case had formerly been assigned to appellant. Rohlik, who had been paying his court-ordered child support of $301 per month to appellant in cash, sought appellant's help after receiving a notice from Redwood County that the bulk of his child support had not been paid. Appellant asked Rohlik to sign an affidavit falsely stating he had not paid the child support. In exchange for this, appellant promised to get Rohlik a court order forgiving the arrears. Appellant told Rohlik that unless he provided the false affidavit, appellant would deny that the money had been paid, leaving Rohlik open to an enforcement action. Intent on proving that he had paid the child support, Rohlik spoke with Deputy Sheriff Rick Morris, which resulted in Rohlik's agreement to wear a body wire while meeting with appellant.

During the first meeting, appellant told Rohlik that a computer error resulted in the system not recording Rohlik's payments and that Rohlik should have been paying $600 a month. Appellant instructed Rohlik to trust him, to plead stupidity, and not to discuss the situation with Ann Bavier, appellant's successor who was now handling Rohlik's case. In a second meeting, appellant again told Rohlik that he should have been paying $600 a month and suggested that Rohlik simply admit he owed the extra $300 a month. Appellant assured Rohlik that either he or Sheryl Dudgeon, another child support officer, would clear the debt. In a third meeting, appellant threatened Rohlik by telling him that without appellant, Rohlik would have

no way to prove he had paid the child support. He later assured Rohlik, "I am 99.999 percent sure that I'm going to be back there [working in the child support office]."

Appellant also encouraged Rohlik's younger brother to talk with Rohlik about admitting the arrearage in child support. At Rohlik's brother's suggestion that Rohlik simply try to work things out himself with the county, appellant observed, "The one thing about cash * * * [i]t can't be tracked."

From January 1, 1996, through June 30, 1997, appellant took approximately $21,000 in cash, checks, and other forms of child support payments. This amount includes the cash payments appellant received from Rohlik. Respondent State of Minnesota offered the testimony of Abigail Grenfell, a Management Analyst who performed an audit of more than 400 Redwood County case files. She found problems in over 25 percent of the cases. All of the cases with problems had been assigned to appellant. Grenfell also reviewed all of the checks appellant cashed and determined that the checks were not posted or recorded on the child support computer system, and that there were no records of receipt from the State or the custodial parent and no records of credit for the payment. Grenfell also found that appellant modified child support obligations and adjusted arrearages on the computer system without the requisite court order. She testified that there is no reason for a child support officer to cash a child support check.

Appellant testified that he often cashed child support checks to distribute the money directly to financially strapped custodial parents and to avoid the long and complicated distribution process. He claimed to have kept careful records of when and why he cashed the checks, but by the time criminal charges were brought, the records had mysteriously disappeared. Appellant also testified that he occasionally modified child support obligations without asking for a court order for efficiency's sake.

The jury found appellant guilty on all counts. At sentencing, appellant moved for a new trial or a judgment of acquittal, and respondent moved for an upward durational departure pursuant to Minn. R.Crim. P. 27.03, arguing that appellant's conduct constituted a "major economic offense." The district court granted appellant's motion for acquittal of the three theft by false representation counts. In sentencing appellant on the three counts of theft of more than $2,500 and the one count of bribery, the district court departed both dispositionally and durationally, and sentenced appellant to four concurrent, executed prison terms of 24, 30, 30, and 42 months. The presumptive sentences for the three theft convictions and the bribery conviction are stayed prison terms of 12, 15, 15, and 21 months.

## ISSUES

1. Is the evidence sufficient to support appellant's conviction of bribery by a public officer or public employee under Minn. Stat. § 609.42, subd. 1(2)?

2. Did the district court abuse its discretion in excluding evidence of the outcome of appellant's termination hearing as a child support officer?

3. Did the district court abuse its discretion in departing dispositionally and durationally in sentencing appellant?

## ANALYSIS

### 1. Sufficiency of the Evidence

■ In considering a claim of insufficient evidence, this court's review is limited to a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to allow the jurors to reach the verdict that they did. *State v. Webb*, 440 N.W.2d 426, 430 (Minn.1989). The reviewing court must assume that the jury believed the state's witnesses and disbelieved any evidence to the contrary. *State v. Moore*, 438 N.W.2d 101, 108 (Minn.1989). The reviewing court will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude the defendant was guilty of the charged offense. *State v. Alton*, 432 N.W.2d 754, 756 (Minn.1988).

■ Appellant contends that his bribery conviction must be reversed because the evidence is insufficient to prove beyond a reasonable doubt that he was a public officer or public employee when he solicited a false affidavit from Rohlik.[1]

For purposes of Minn.Stat. § 609.42, subd. 1(2):

(1) "Public officer" means:

(a) an executive or administrative officer of the state or of a county, municipality or other subdivision or agency of the state;

(b) a member of the legislature or of a governing board of a county, municipality, or other subdivision of the state, or other governmental instrumentality within the state;

(c) a judicial officer;

(d) a hearing officer;

(e) a law enforcement officer; or

(f) any other person exercising the functions of a public officer.

(2) "Public employee" means a person employed by or acting for the state or a county, municipality, or other

---

1. Under Minn.Stat. § 609.42, subd. 1(2), the crime of bribery by a public officer or employee is defined as:

 Subdivision 1. Acts constituting. Whoever does any of the following is guilty of bribery and may be sentenced to imprisonment for not more than ten years or to payment of a fine of not more than $20,000, or both:

 (2) Being a public officer or employee, requests, receives or agrees to receive, directly or indirectly, any such benefit, reward or consideration upon the understanding that it will have such an influence * * *.

subdivision or governmental instrumentality of the state for the purpose of exercising their respective powers and performing their respective duties, and who is not a public officer.

Minn.Stat. § 609.415, subd. 1 (1996).

In March of 1997, appellant was fired; on April 30, 1997, his paychecks and benefits were permanently discontinued. He did not solicit the false affidavit from Rohlik until June 1997. But even after his termination, appellant was still a "resource person" on the Rohlik case who continued to refer to Rohlik as a "client;" appellant specifically instructed child support officer Bavier to change the amount of Rohlik's child support from $50 to $301 effective June 1, 1997, and appellant had frequent contact with Dudgeon regarding child support matters while she was still employed as a child support officer. Appellant held himself out as a child support officer to Rohlik, told Rohlik it was "99.999 percent certain" that he would be re-employed, and directed Rohlik to continue to make payments to him. Appellant collected Rohlik's child support payments in June of 1997 and told Rohlik that he had the authority to affect Rohlik's child support obligations by obtaining an order from the court forgiving the arrears, providing Rohlik supplied the false affidavit.

 The jury found that appellant was a public officer or public employee at the time he solicited the false affidavit from Rohlik. However, "penal statutes must be construed strictly; any reasonable doubt must be interpreted in favor of the defendant." *State v. Corbin*, 343 N.W.2d 874, 875–76 (Minn.App.1984) (citing *State v. Olson*, 325 N.W.2d 13, 19 (Minn.1982); *State v. Haas*, 280 Minn. 197, 200, 159 N.W.2d 118, 121 (1968)). Appellant had been terminated from his position as a child support officer and his paychecks and benefits had been permanently discontinued for over a month before he solicited the false affidavit. Appellant was no longer "employed by" the county, and whether he was "acting for" the county or "exercising the functions of a public officer," is ambiguous and unclear. As a criminal statute, Minn.Stat. § 609.42, subd. 1(2), must be construed in favor of appellant and against the state. *See Corbin*, 343 N.W.2d at 875–76. Accordingly, we reverse appellant's bribery conviction because considering the statutory definitions of public officer and public employee, the evidence is ambiguous as to whether appellant was included in either category when he solicited the false affidavit from Rohlik. A conviction that rests upon a material evidentiary ambiguity must be reversed because such evidence cannot provide proof beyond a reasonable doubt of a defendant's guilt. *See State v. Auchampach*, 540 N.W.2d 808, 816 (Minn.1995) (citations omitted).

## 2. Evidentiary Ruling

 We largely defer to the district court's evidentiary rulings, which will not be overturned absent a clear abuse of discretion. *State v. Kelly*, 435 N.W.2d 807, 813 (Minn.1989). "[E]ven when a defendant alleges that his constitutional rights were violated, evidentiary questions are reviewed for abuse of discretion." *State v. Profit*, 591 N.W.2d 451, 463 (Minn.1999) (citing *State v. Gustafson*, 379 N.W.2d 81, 84 (Minn.1985)), *cert. denied, sub. nom. Profit v. Minnesota*, 528 U.S. 862, 120 S.Ct. 153, 145 L.Ed.2d 130 (1999).

 Appellant contends that the district court violated his constitutional rights to confront and cross-examine witnesses and to present a defense by excluding as irrelevant evidence of the outcome of his employment termination hearings and the administrative findings. "[A] defendant has no constitutional right to present irrelevant evidence." *State v. Jensen*, 373 N.W.2d 364, 366 (Minn.App.1985), *review denied* (Minn. Oct. 11, 1985). Evidence that is not relevant is inadmissible. Minn. R. Evid. 402. A decision to exclude evidence as irrelevant is subject only to an

abuse of discretion standard of review. *See State v. Horning,* 535 N.W.2d 296, 298 (Minn.1995).

Appellant contends that the administrative findings were necessary to attack the credibility of respondent's witnesses. However, the district court gave appellant wide latitude to question his former co-workers regarding their dislike of him or their knowledge of others' dislike of him. The jury heard specific testimony that someone surreptitiously made copies of appellant's time sheets, that animosity toward appellant existed in the office, that it was general knowledge that people disliked appellant, and that another child support officer was disliked because of her association with appellant. Appellant testified as to his handling of office matters and his disputes with co-workers. Accordingly, the record does not support appellant's claim that the district court's ruling prevented him from exposing the alleged bias of his former co-workers.

■■■■■ Even if the evidence was erroneously excluded, the exclusion was harmless.

> Harmless error impact analysis applies to the erroneous exclusion of defense evidence in violation of the defendant's right to present evidence. * * * The correct inquiry is * * * whether, assuming that the damaging potential of the [excluded evidence] were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. * * * [T]he reviewing court must be satisfied beyond a reasonable doubt that if the evidence had been admitted and the damaging potential of the evidence fully realized, an average jury (i.e., a reasonable jury) would have reached the same verdict.

*State v. Post,* 512 N.W.2d 99, 102 (Minn. 1994) (quotation and citations omitted). Based upon the overwhelming evidence in support of appellant's theft convictions, we conclude that a reasonable jury would have reached the same verdict even if the excluded evidence had been admitted and its damaging potential fully realized.

### 3. Sentencing Departures

■■■■■ We review departures from presumptive sentences under an abuse of discretion standard; there must be "substantial and compelling circumstances" in the record to justify a departure. *Rairdon v. State,* 557 N.W.2d 318, 326 (Minn. 1996).

> If the record supports findings that substantial and compelling circumstances exist, this court will not modify the departure unless it has a "strong feeling" that the sentence is disproportional to the offense.

*State v. Anderson,* 356 N.W.2d 453, 454 (Minn.App.1984). Generally, in determining whether to depart in sentencing, a district court must decide "whether the defendant's conduct was significantly more or less serious than that typically involved in the commission of the crime in question." *State v. Broten,* 343 N.W.2d 38, 41 (Minn.1984). Relevant aggravating factors include:

(4) The offense was a major economic offense, identified as an illegal act or series of illegal acts committed by other than physical means and by concealment or guile to obtain money or property, to avoid payment or loss of money or property, or to obtain business or professional advantage. The presence of two or more of the circumstances listed below are aggravating factors with respect to the offense:

(a) the offense involved multiple victims or multiple incidents per victim;

(b) the offense involved an attempted or actual monetary loss substantially greater than the usual offense or substantially greater than the minimum loss specified in the statutes;

(c) the offense involved a high degree of sophistication or planning or occurred over a lengthy period of time;

(d) the defendant used his or her position or status to facilitate the commission of the offense, including positions of trust, confidence, or fiduciary relationships; or

(e) the defendant has been involved in other conduct similar to the current offense as evidenced by the findings of civil or administrative law proceedings or the imposition of professional sanctions.

Minnesota Sentencing Guidelines II. D.2(b)(4). *See also State v. O'Hagan,* 474 N.W.2d 613, 623–24 (Minn.App.1991) (upward durational and dispositional departure from presumptive guidelines sentence appropriate where conduct constitutes major economic offense and aggravating factors exist), *review denied* (Minn. Sept. 25, 1991).

 The district court specified that the aggravating factors it placed on the record applied to both the durational and the dispositional departures. "The same aggravating factors may be used to justify both durational and dispositional departures." *Id.* at 624 (citing *State v. Lalli,* 338 N.W.2d 419, 421 (Minn.1983)).

The district court found that appellant's conduct constituted a major economic offense and that at least four of the five aggravating factors existed: (a) the offenses involved multiple victims and involved multiple instances per victim; (b) each of the counts of theft involved double or triple the minimum loss specified for that offense; (c) the offenses involved a high degree of sophistication and planning and occurred over a lengthy period of time; and (d) appellant used his position or status to facilitate the commission of the offense including positions of trust, confidence, or a fiduciary relationship.

The district court also indicated additional factors supporting the dispositional departure:

[A]s far as the dispositional departure, your conduct is more egregious and you are unamenable to treatment. * * *

[N]ot only you are not showing any remorse for what you are doing but you are continuing to do what you can to prevent a recovery of restitution and one of the main places it goes is to, is low income families with children.

 Appellant contends that the district court's findings that appellant's conduct was more egregious and that appellant was unamenable to treatment because he did not show any remorse are not supported by the record and cannot justify a dispositional departure. But we conclude that they are supported by the record, and contrary to appellant's argument, "[a defendant's] remorse, his cooperation, [and] his attitude while in court" are appropriate factors in determining whether to depart dispositionally. *State v. Trog,* 323 N.W.2d 28, 31 (Minn.1982).

Because the district court has an opportunity to actually observe the defendant throughout the proceedings, a reviewing court must defer to the district court's assessment of the sincerity and depth of the remorse and what weight it should receive in the sentencing decision. The presence or absence of remorse can be a very significant factor in determining whether a defendant is particularly amenable to probation.

*State v. Sejnoha,* 512 N.W.2d 597, 600 (Minn.App.1994) (citations omitted), *review denied* (Minn. April 21, 1994).

 Appellant also contends that the district court erred by using the Hernandez method to generate criminal history scores in addition to doubling the presumptive sentence for each conviction. *See State v. Hernandez,* 311 N.W.2d 478 (Minn.1981). However,

[T]he use of the *Hernandez* method of computing a criminal history score in conjunction with a durational departure does not necessarily constitute an unfair manipulation of the guidelines.

*State v. O'Brien,* 429 N.W.2d 293, 296 (Minn.App.1988), *review denied* (Minn.

Nov. 16, 1988).[2] The district court did not abuse its discretion in making a dispositional and a double upward durational departure in sentencing appellant.

Because we reverse appellant's bribery conviction, his sentence is modified to three concurrent, executed prison terms of 24, 30, and 30 months for his theft convictions. We therefore affirm appellant's sentence as modified.

## DECISION

We affirm the district court's evidentiary ruling, affirm appellant's sentence as modified, and reverse appellant's bribery conviction.

**Affirmed in part, affirmed as modified in part, and reversed in part.**

---

**2.** While *State v. Moore*, 340 N.W.2d 671, 673 (Minn.1983), cautioned against using *Hernan-* *dez* with consecutive sentences, appellant's sentences are to run concurrently.